UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Ct. No. 21-00281 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

## COMPLAINT

Plaintiffs Best Mattresses International Company Limited ("Best Mattresses") and Rose Lion Furniture International Company Limited ("Rose Lion"), by and through their counsel, allege and state as follows:

### I.     PROCEEDING UNDER REVIEW

1.     This action seeks judicial review of certain aspects of the final affirmative antidumping duty determination by the U.S. Department of Commerce ("Commerce") with respect to mattresses from Cambodia.  See Mattresses From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 86 Fed. Reg. 15,894 (Dep't of Commerce Mar. 25, 2021) ("Final Determination"), and accompanying Issues and Dec. Mem. ("Final I&D Mem."), as amended by Mattresses From Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia, 86 Fed. Reg. 26,460 (Dep't of Commerce May 14, 2021) ("Amended Final

Determination").

## II.     JURISDICTION AND STANDARD OF REVIEW

2.      Plaintiffs brings this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II); (a)(2)(B)(i).

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A(a)(2)(A)(i)(II),(a)(2)(B)(i) of the Act, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i).

4.      The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III.     STANDING

5.      Plaintiffs are foreign producers and exporters of the subject merchandise who were selected as mandatory respondents for which Commerce calculated a dumping margin and, thus, qualify as interested parties pursuant to 19 U.S.C. § 1677(9)(A).

6.      Accordingly, Plaintiffs, have standing to bring this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## IV.     TIMELINESS OF THIS ACTION

7.      Plaintiffs commenced this action by filing a summons on June 11, 2021, which was within thirty days after the publication of the antidumping duty order in the Federal Register.  19 U.S.C. § 1516a(a)(2)(A)(i)(II); see Amended Final Determination, 86 Fed. Reg. 26,460; Summons (June 11, 2021), ECF No. 1.

8.      Pursuant to 28 U.S.C. § 2636(c), a complaint in a civil action brought under 28

U.S.C. § 1581(c) must be filed in accordance with USCIT R. 3(a)(2), requiring that a complaint be filed within thirty days of the summons. This complaint is, therefore, timely filed because it is being filed within thirty days of the filing of the summons in this matter, which was filed on June 11, 2021.

## V.      STATEMENT OF FACTS

9.      On March 31, 2020 Brooklyn Bedding, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises, Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (collectively "Petitioners") filed a petition for the imposition of antidumping duties on dumped imports of mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam, as well as the imposition of countervailing duties on subsidized imports of mattresses from China. See Mattresses From Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations, 85 Fed. Reg. 23,002 (Dep't of Commerce Apr. 24, 2020).

10.     On April 24, 2020, Commerce published notice of the initiation of a less-than-fair value investigation on mattresses from Cambodia. See id.

11.     On May 21, 2020, the International Trade Commission (the "Commission") published notice of its affirmative preliminary injury determination. See Mattresses From Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam, 85 Fed. Reg. 30,984 (Int'l Trade Comm'n May 21, 2020).

12.     On May 22, 2020, Commerce selected Best Mattresses and Rose Lion as mandatory respondents. See Mattresses From Cambodia: Preliminary Affirmative Determination of Sales at

<u>Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures</u>, 85 Fed. Reg. 69,594 (Dep't of Commerce Nov. 3, 2020) ("<u>Prelim. Determination</u>"), and accompanying Issues and Dec. Mem. at 2 ("Prelim. I&D Mem.")

13. In June and July 2020, Plaintiffs submitted timely responses to Section A of Commerce's antidumping questionnaire, i.e., the section relating to general information, and to sections C, and D of Commerce's antidumping questionnaire, i.e., the sections relating to U.S. sales, cost of production ("COP") and constructed value. <u>See</u> Prelim. I&D Mem. at 3. From July through September 2020, Plaintiffs submitted timely responses to Commerce's supplemental questionnaires. <u>See</u> <u>id.</u>

14. On August 11, 2020, Commerce published notice in the Federal Register that it was postponing the preliminary determination to no later than October 27, 2020. <u>See</u> <u>Mattresses From Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Postponement of Preliminary Determinations in the Less-Than-Fair-Value Investigations</u>, 85 Fed. Reg. 48,505 (Dep't of Commerce Aug. 11, 2020).

15. On September 29, 2020, Plaintiffs filed a request to postpone the final determination and to extend provisional measures. <u>See</u> <u>Prelim. Determination</u>, 85 Fed. Reg. at 69,596.

16. On November 3, 2020, Commerce published its affirmative preliminary determination of sales at less-than-fair-value and also collapsed the two respondents as one entity. No parties contested Commerce's decision to collapse the Plaintiffs. <u>See</u> <u>Prelim. Determination</u>, 85 Fed. Reg.at 69,595. Commerce calculated a single dumping margin of 252.74 percent for both Plaintiffs. Commerce also postponed the final determination until no later than March 18, 2021.

See id. at 69,596.

17. In the Preliminary Determination, to calculate Plaintiffs' COP of subject merchandise, Commerce selected various market prices against which it compared Plaintiffs' input purchases from affiliated suppliers pursuant to the transactions disregarded and major input rules codified in 19 U.S.C. § 1677b(f)(2)-(3). See Prelim. Determination, and accompanying Cost Mem. at 2 (Public Version).

18. For Plaintiffs' major inputs, Commerce selected Brazil as a surrogate country and used Global Trade Atlas ("GTA") import data into Brazil to value the COP of Plaintiffs' major inputs, instead of relying on Plaintiffs' own costs. See id. To value Plaintiffs' other inputs, including fixed assets and packing materials, Commerce averaged import prices compiled by GTA for six countries (Brazil, Malaysia, Mexico, Romania, Russia and Turkey). See id.

19. In addition, Commerce used the financial statements of an Indian mattress producer Emirates Sleep Systems Private Limited ("Emirates") to construct Plaintiffs' profit and selling expenses ratios instead of the financial statements of a comparable Cambodian company, Grand Twins International ("GTI"). See id.

20. Based on these surrogate market prices, Commerce made significant adjustments to Plaintiffs' reported COP. See id.

21. On January 19, 2021, Plaintiffs filed a case brief disputing Commerce's preliminary determination on various grounds, but Plaintiffs did not challenge Commerce's collapsing of the two mandatory respondents and filed their case brief jointly. See Final I&D Mem. at 2. Plaintiffs challenged Commerce's COP calculation methodology, and, in particular, its application of the transactions disregarded and major input rules and selection of surrogate prices to ascertain the market price and input COP of Plaintiffs' material input purchases. See Final I&D Mem. at Cmt.

2. Plaintiffs also urged Commerce to revise its preliminary calculation of Plaintiffs' fixed assets depreciation on the basis that fixed assets are treated differently in Plaintiffs' accounting system than production inputs and, thus, should not be valued using the same methodology. See id. Plaintiffs also pointed out the significant flaws in Emirates' financial statements and argued that Commerce should, instead, use GTI's financial statements in the final determination. See id.

22. On March 5, 2021, Commerce conducted a hearing. See id. at 2. Plaintiffs' counsel participated and discussed issues raised in their case brief. Petitioners' counsel also appeared and presented issues raised in their rebuttal brief.

23. On March 25, 2021, Commerce published its affirmative final determination of sales at less-than-fair-value and calculated a dumping margin of 45.34 percent for Plaintiffs. See Final Determination, 86 Fed. Reg. at 15,895. Commerce revised its preliminary selection of Brazil as a surrogate country to value Plaintiffs' major inputs and, instead, used the average value of the GTA data from six countries (i.e., Brazil, Malaysia, Mexico, Romania, Russia and Turkey) in its final COP calculation. See Final I&D Mem. at Cmt. 1. Commerce, however, included aberrational data from Romania in its final COP calculation and also excluded Mexico data on the basis of unit conversion when the record clearly provided Commerce with converting information. See id.; Final Determination, and accompanying Cost Mem. at 2, Attach. 1E (Public Version) ("Final Cost Mem.").

24. Moreover, Commerce continued to use its preliminary minor input adjustment methodology to adjust fixed asset depreciation expenses despite Plaintiffs' claims that material expenses and depreciation are distinct and operate differently within Plaintiffs' accounting system, as Plaintiffs raised in their case brief. See Final Cost Mem. at 2 (Public Version).

25. In addition, Commerce continued to rely on Emirates' financial statements to

construct Plaintiffs' profit and selling expenses ratios. See id.

26. Between March 29 and April 5, Plaintiffs and Petitioners submitted ministerial error allegations and rebuttals comments regarding clerical errors in Commerce's calculation. See Mem. from John C. McGowan to James Maeder re: Antidumping Duty Investigation of Mattresses from Cambodia: Allegations of Ministerial Errors in Final Determination (Apr. 19, 2021) (Public Version) ("Ministerial Error Mem.").

27. On May 14, 2021, the Commission published its affirmative final injury determination in the Federal Register. See Mattresses From Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam, 86 Fed. Reg. 26,545 (Int'l Trade Comm'n May. 14, 2021).

28. On May 14, 2021, Commerce published its amended final determination of sales at less-than-fair-value, which corrected certain clerical errors in Commerce's dumping margin calculation, assigned a dumping margin of 52.41 percent to Plaintiffs and also issued the antidumping duty order on mattresses from Cambodia. Amended Final Determination, 86 Fed. Reg. at 26,462. Commerce accepted Petitioners' ministerial error allegation and Plaintiffs' ministerial error allegation on packing cost, but refused to correct the error of excluding Mexican data to evaluate a certain input. See Ministerial Error Mem. at 3-4 (Public Version).

## VI.     STATEMENT OF THE CLAIMS

### COUNT I

29. Plaintiffs herein incorporate by reference paragraphs 1 through 28, supra, of this complaint.

30. Commerce's use of surrogate country data from six countries to value the COP of Plaintiffs' major inputs in this market economy investigation rather than Plaintiffs' own reported

7

prices or, alternatively, market price data from Cambodia is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT II

31.     Plaintiffs herein incorporates by reference paragraphs 1 through 30 supra, of this complaint.

32.     Even if the Court upholds Commerce's use of surrogate values to calculate the COP of Plaintiffs' major inputs challenged in Count I of this complaint, Commerce's inclusion of Romanian GTA data in its calculation of Plaintiffs' major input COP is nevertheless unsupported by substantial evidence and unlawful because certain Romanian GTA data are aberrational and seriously corrupt Commerce's overall major input COP calculation.

## COUNT III

33.     Plaintiffs herein incorporates by reference paragraphs 1 through 32 supra, of this complaint.

34.     Even if the Court upholds Commerce's use of surrogate values to calculate the COP of Plaintiffs' major inputs challenged in Count I of this complaint, Commerce's decision to exclude Mexican GTA data from its COP calculation for one of Plaintiffs' major inputs on the basis that the Mexican GTA data for this input were reported in square meters ("m2") rather than kilograms ("kg") is unsupported by substantial evidence and otherwise not in accordance with law because record evidence provides an input-specific m2/kg conversion factor using Plaintiffs' reported purchases.

## COUNT IV

35.     Plaintiffs herein incorporate by reference paragraphs 1 through 34, supra, of this complaint.

36. Commerce's application of the transactions disregarded rule under section 773(f)(2) of the Act to adjust Plaintiffs' fixed asset depreciation expenses is unsupported by substantial evidence and otherwise not in accordance with law because Commerce ignored relevant market price data proposed by Plaintiffs and, instead, used surrogate price data for material inputs to calculate its adjustment ratio even though raw materials and fixed assets depreciation are different types of expenses that operate differently within Plaintiffs' accounting system.

### COUNT V

37. Plaintiffs herein incorporate by reference paragraphs 1 through 36, supra, of this complaint.

38. Commerce's reliance on Emirates' financial statements, and rejection of GTI's financial statements, to calculate Plaintiffs' profit and selling expenses ratios is unsupported by substantial evidence and otherwise not in accordance with law because Emirates' financial statements are significantly flawed and reflect third country expenses while GTI's financial statements are reliable and reflect the expenses of a producer of comparable producer in Cambodia, the country under investigation.

### DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiffs respectfully pray that this Court:

(1) declare Commerce's actions as described in Counts I-V unsupported by substantial evidence and otherwise not in accordance with law;

(2) remand to Commerce with instructions to recalculate the dumping margin assigned to Plaintiffs in this investigation in accordance with the Court's decision;

(3) order Commerce to publish an amended final determination in the Federal Register in

accordance with a final decision by this Court in this matter, and, if applicable, exclude Plaintiffs from the application of any revised antidumping Order if Plaintiffs' amended dumping margin is de minimis as a matter of law;

(4) order Commerce to issue amended cash deposit instructions to Customs Border Protection consistent with this Court's decision; and

(5) provide such other relief as this honorable Court deems proper.

                Respectfully submitted,

                /s/ Jeffrey S. Grimson
                Jeffrey S. Grimson
                Kristin H. Mowry
                Sarah M. Wyss
                Wenhui "Flora" Ji
                **Mowry & Grimson, PLLC**
                *Counsel to Rose Lion Furniture International Company Limited and Best Mattresses International Company Limited*

Date: July 9, 2021