Slip Op. 22-11

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED,<br><br>        Plaintiffs and Consolidated Defendant-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>BROOKLYN BEDDING, LLC; CORSICANA MATTRESS COMPANY; ELITE COMFORT SOLUTIONS; FXI, INC.; INNOCOR, INC.; KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT, INCORPORATED; THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,<br><br>        Defendant-Intervenors and Consolidated Plaintiffs. | Before: Gary S. Katzmann, Judge<br>Consol. Court No. 21-00281 |

## OPINION

[The court grants Plaintiffs' motion to enjoin liquidation of entries.]

Dated: February 14, 2022

Jeffrey S. Grimson, Kristin H. Mowry, Sarah M. Wyss, and Wenhui (Flora) Ji, Mowry & Grimson, PLLC, of Washington, D.C., for Plaintiffs and Consolidated Defendant-Intervenors Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director. Of counsel on the brief was Paul K. Keith, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Yohai Baisburd, Jack A. Levy, and Chase J. Dunn, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant Intervenors and Consolidated Plaintiffs Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett &Platt, Incorporated; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO.

    Katzmann, Judge: This case involves an application for statutory injunction on liquidation, contested by the parties on the basis of its proposed length. Plaintiffs Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited ("Plaintiffs") have requested an extended injunction on the liquidation of any of their merchandise entered on or after November 3, 2020 (excluding a May 2, 2021 through May 13, 2021 "gap period") for the pendency of the litigation.[1] Defendant the United States ("The Government") opposes the extended injunction and instead requests that the injunction on liquidation not extend past April 30, 2022. After consideration of the factors permitting issuance of a statutory injunction, the court now grants Plaintiffs' motion for a statutory injunction from November 3, 2020 until the resolution of the instant case and any associated appeals, excluding the agreed-upon gap period.

---

[1] The "gap period" encompasses those entries entered or withdrawn from warehouse for consumption in the period between the final day of the provisional measures and the publication of the International Trade Commission's final determination. Pls.' Mot. for Stat. Inj. at 2, July 30, 2021, ECF No. 18 ("Pls.' Br."). This period is uncontested and therefore falls outside the scope of this opinion.

## BACKGROUND

### I.  Legal Background

Under the Tariff Act of 1930, Commerce is authorized to investigate potential dumping activity and, if dumping is found, levy antidumping duties ("ADs") on the unfairly priced goods. Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046–47 (Fed. Cir. 2012). Dumping occurs when a foreign company sells a product in the United States for less than its fair value. See 19 U.S.C. § 1677b(a). Accordingly, the first step in imposing ADs is for Commerce to determine whether a good is being sold at less than its fair value. Id. Next, the International Trade Commission ("ITC") must determine whether the domestic industry that produces the product under investigation is materially injured, is threatened with material injury, or if the establishment of a domestic industry is materially retarded by the sale of the dumped product. 19 U.S.C. § 1673. If dumping has occurred, and has been found to injure, threaten, or retard domestic industry, Commerce may impose ADs on the dumped product. Id.

On a practical level, Commerce's imposition of duties begins when Commerce first determines the applicable duty rate. If Commerce preliminarily concludes, in the course of its investigation, that duties are appropriate, it then publishes a preliminary determination setting out (among other things) the duty rates calculated for specific merchandise and exporters. See 19 U.S.C. 1673b(d)(1). Commerce next orders the posting of security for implicated merchandise, 19 U.S.C. 1673b(d)(1)(B), and the suspension of liquidation[2] "of all entries of merchandise subject to the [preliminary] determination which are entered, or withdrawn from warehouse, for consumption on or after the later of" the publication of the preliminary determination or sixty days

---

[2] Liquidation is "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. In laymen's terms, liquidation is the final adding-up of duties owed on an imported good; after liquidation, collection of duties may commence.

from the publication of the notice of initiation of investigation. See 19 U.S.C. 1673b(d)(2). Both the duty rates set out in the preliminary determination and the suspension of liquidation then remain in place for a maximum of four months, with a potential extension to six. See 19 U.S.C. 1673b(d)(3). A final determination of duty rates is then published, see 19 U.S.C. 1673d(d), and if Commerce's determination remains affirmative, suspension of liquidation of the subject merchandise is extended, see 19 U.S.C. 1673d(c)(4).

Because the United States "has a 'retrospective' assessment system under which final liability for antidumping . . . duties is determined after merchandise is imported," final duty liability is most frequently determined through the administrative review process. 19 C.F.R. 351.213(a). Review of an AD order may be requested on the first anniversary of its publication, 19 C.F.R. 351.213(b)(1), and the period of review covers either (for the first administrative review) the period from the commencement of suspension of litigation to the month immediately prior to the anniversary month, or (for all other reviews) the 12 months immediately prior to the anniversary month, 19 C.F.R. 351.213(e)(1). At the conclusion of the administrative review process -- or upon no request for administrative review -- Commerce finalizes the applicable duty rates and instructs CBP to liquidate the relevant entries within six months. 19 U.S.C. § 1504(d); see generally, 19 C.F.R. § 351.213.

## II. Procedural History

In the present case, Plaintiffs were selected as mandatory respondents in Commerce's investigation of the sale of mattresses from Cambodia for less than fair value.[3] Second Am.

---

[3] In AD investigations, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f-1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or

Compl. at 4, ECF No. 22, Aug. 9, 2021.  The investigation resulted in both an affirmative preliminary determination, published on November 3, 2020, and an affirmative final determination, published on March 25, 2021.  <u>Mattresses From Cambodia: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures</u>, 85 Fed. Reg. 69,594 (Dep't Commerce Nov. 3, 2020) ("<u>Preliminary Determination</u>"); <u>Mattresses From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances</u>, 86 Fed. Reg. 15,894 (Dep't Commerce Mar. 25, 2021) ("<u>Final Determination</u>"), and accompanying Issues and Dec. Mem., ECF No. 27-5 ("IDM").  The <u>Final Determination</u> imposed an AD rate of 45.34% on Plaintiffs (which was later revised to 52.41% in an amended final determination issued on May 14, 2021) and ordered the suspension of liquidation "until further notice."  <u>Final Determination</u> at 15,895–96; <u>Mattresses From Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia</u>, 86 Fed. Reg. 26,462 (Dep't Commerce May 14, 2021) ("<u>Amended Final Determination</u>").

---

producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to--

    (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or

    (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

Plaintiffs subsequently brought this action to challenge the Final Determination, alleging that Commerce's use of surrogate country data, rather than Plaintiffs' own reported prices, to value the cost of production of Plaintiffs' major inputs was unsupported by substantial evidence and not in accordance with law -- and further alleging that even if the use of surrogate country data was permitted, Commerce's inclusion of Romanian data and exclusion of Mexican data was not. Second Am. Compl. at 8–9. Plaintiffs also alleged specific problems with Commerce's analysis of Plaintiffs' expenses and expense-to-profit ratios, as well as Commerce's assessment of Plaintiffs' U.S. sales. Id. at 9–10. Shortly after initiating suit, on July 30, 2021, Plaintiffs filed a motion to enjoin the liquidation of "any unliquidated entries of Mattresses from Cambodia" that were produced or exported by Plaintiffs and were subject to the Final Determination. Pls.' Br. at 1–2. In relevant part, Plaintiffs' motion requested that the injunction extend to all entries, past and future, which were "entered, or withdrawn from warehouse, for consumption on and after November 3, 2020 excluding any merchandise entered or withdrawn from warehouse, for consumption, on May 2, 2021 through May 13, 2021." Id. The proposed injunction would remain in place for the "pendency of [the] litigation, including any appeals." Id.

The Government filed a partial opposition to Plaintiffs' motion on August 20, 2021. Resp. in Partial Opp. to Mot. for Stat. Inj., ECF No. 25 ("Def.'s Br."). While not opposing an injunction "covering [Plaintiffs'] unliquidated entries through the end of the first administrative review period," the Government argued that the proposed "open-ended" injunction, preventing liquidation of all entries for the duration of the litigation, would be overbroad. Id. at 2. The Government requested that the injunction accordingly extend only until April 30, 2022 -- the end of the first administrative review period. Id. While acknowledging that it "do[es] not intend to oppose" future extensions to the injunction, to the extent "th[e] litigation is not resolved before entries from

subsequent periods could potentially become subject to liquidation," the Government argued that limiting the injunction for the time being would align with court precedent and reflect Plaintiffs' failure to establish irreparable harm from an injunction extending only until April 30, 2022. Id. at 3. In addition, the Government argued that Plaintiffs failed in their motion to "allege[] sufficient facts establishing likely success on the merits, that the balance of equities weigh in [their] favor, or that the public interest would be served through imposition of the injunctive relief sought." Id.

Plaintiffs replied in support of their motion on September 1, 2021, arguing that "[t]here are independent reasons . . . for the [c]ourt to issue an injunction separate from maintaining the status quo" which favor an extended injunction -- among them, ensuring that all entries are "properly liquidated" and conserving government resources. Pls.' Resp. to Def.'s Partial Opp. to Pls' Mot. for Stat. Inj. at 3–4, ECF No. 28. Plaintiffs further argued that likely success on the merits was established, and that both the balance of equities and the public interest favor an extended injunction. Id. at 4–6. The court now grants Plaintiffs' motion for statutory injunction in full.

## JURSDICTION

The court has jurisdiction over the underlying action pursuant to 28 U.S.C. § 1581(c), and over Plaintiffs' motion for injunctive relief pursuant to 19 U.S.C. § 1516a(c)(2), which provides that "the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise . . . upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances." The rules of the court further provide for the filing of a motion for statutory injunction, or a Form 24 proposed order for statutory injunction upon consent, to obtain relief from liquidation. CIT R. 56.2.

## DISCUSSION

The injunctive remedy afforded by 19 U.S.C. § 1516a(c)(2) is intended to "preserve an interested party's right to challenge final determinations . . . in antidumping and countervailing duty cases while enlarging the opportunities for judicial review of interim decisions made during the course of an investigation." Zenith Radio Corp. v. United States, 710 F.2d 806, 811 (Fed. Cir. 1983) (citing S. Rep. No. 96–249, 96th Cong., 1st Sess. 245, reprinted in 1979 U.S. Code Cong. & Ad. News 381, 630–631). Since the institution of this remedy, "suspension of liquidation of subject entries" has become a "routine procedure in [antidumping duty cases] because liquidation can render the litigation moot." Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States, 406 F.3d 1377, 1380 (Fed. Cir. 2005) (citation omitted); see also Husteel Co., Ltd. v. United States, 38 CIT __, __, 34 F. Supp. 3d 1355, 1359 (2014) ("Because of the unique nature of antidumping and countervailing duty challenges, the court routinely enjoins liquidation to prevent irreparable harm to a party challenging the antidumping or countervailing duty rate." (citing Wind Tower Trade Coal. v. United States, 741 F.3d 89, 95 (Fed. Cir. 2014))); Mosaic Co. v. United States, 45 CIT __, __, 540 F. Supp. 3d 1330, 1334 (2021) ("Injunctions under this statute are not 'extraordinary' and are granted in the ordinary course in cases brought under 19 U.S.C. § 1516a.").

The court considers four factors when deciding whether to grant or deny a motion for injunction of liquidation under 19 U.S.C. § 1516a(c)(2), namely:

> 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction will not be contrary to the public interest.

Ugine & Alz Belg. v. United States, 452 F.3d 1289, 1292 (Fed. Cir. 2006) (listing factors thereafter applied to assess the merits of plaintiff's motion for injunction under 19 U.S.C. § 1516a(c)(2), characterized by the court as a preliminary injunction) (quoting U.S. Ass'n of Imps. of Textiles &

Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1346 (Fed. Cir. 2005)). When reviewing the factors, "'[n]o one factor is dispositive,' and 'the weakness of the showing regarding one factor may be overborne by the strength of the others.'" Mid Continent Steel & Wire, Inc. v. United States, 44 CIT __, __, 427 F. Supp. 3d 1375, 1380 (2020) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)). The crucial factor is irreparable injury: indeed, the "greater the potential harm to the plaintiff, the lesser the burden on [p]laintiffs to make the required showing of likelihood of success on the merits." Ugine, 452 F.3d at 1292 (quoting SKF USA Inc. v. United States, 28 CIT 170, 176, 316 F. Supp. 2d 1322, 1329 (2004)).

## I. *Irreparable Harm*

Plaintiffs argue that they "will likely suffer irreparable harm in absence of injunction because Commerce 'may order liquidation of entries . . . until a contrary court decision is reached.'" Pls.' Br. at 4 (quoting Jilin Henghe Pharm. Co. v. United States, 28 CIT 969, 975–76, 342 F. Supp. 2d. 1301, 1308 (2004), vacated on other grounds, 123 Fed. Appx. 402, 403 (Fed. Cir. 2005)). While acknowledging that liquidation is currently suspended, Plaintiffs note that the suspension will terminate and liquidation will occur within six months of the conclusion of the first administrative review period "if Plaintiffs do not participate in [that] administrative review." Id. at 5. In other words, if Plaintiffs decline to request administrative review of the Final Determination upon the anniversary of its publication, liquidation of the goods entered on and between November 3, 2020 and April 30, 2022 will commence automatically at the rates now contested before the court. Plaintiffs further note that both this court and the Court of Appeals for the Federal Circuit have recognized that liquidation constitutes irreparable harm "because it deprives a party seeking review of the government's determinations of meaningful access of relief through judicial review." Pls.' Br. at 4 (citations omitted). Accordingly, "once the entries

[currently] covered by the provisional measures [suspending liquidation] are liquidated, the court cannot provide any meaningful relief" and a further injunction by the court extending beyond the conclusion of the first administrative review period is necessary to prevent irreparable harm. Id. at 6 (citations omitted).

The Government responds that "no injunction is necessary to counter any irreparable or immediate harm" because liquidation is necessarily suspended until the end of the first administrative review period on April 30, 2022. Def.'s Br. at 2. While the Government is willing to consent to an injunction terminating at the end of the review period -- in other words, terminating upon the date that automatic suspension would cease -- it argues that Plaintiffs have "not alleged sufficient facts demonstrating that [they] will suffer irreparable harm from a statutory injunction that has a specific end date of April 30, 2022" and therefore opposes an injunction extending for the pendency of the litigation. Id. at 2–3.

The court has repeatedly found that "[t]he danger of liquidation pending judicial review of an investigation constitutes irreparable harm." Mid Continent, 427 F. Supp. 3d at 1382; see also Husteel, 34 F. Supp. 3d at 1359; Mosaic, 540 F. Supp. 3d at 1335–36. The same is true here. As the Government notes, irreparable harm is evaluated on the basis of "the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief." Comm. Overseeing Action for Lumber Int'l Trade Investigations v. United States, 43 CIT __, __, 393 F. Supp. 3d 1271, 1276 (2019) (quoting Shree Rama Enter v. Untied States, 21 CIT 1165, 1167, 983 F. Supp. 192, 194 (1997)). Here, the magnitude of the injury -- liquidation of all of Plaintiffs' entered or withdrawn merchandise spanning a period of eighteen months, as well as of Plaintiffs' future entries -- is substantial. Similarly, future relief is inadequate. "Once liquidation occurs, a subsequent decision by the trial court on the merits of [Best Mattresses'] challenge can have no

effect on the dumping duties" because "[t]he statutory scheme has no provision permitting reliquidation." Zenith, 710 F.2d at 810; see also Am. Signature, Inc. v. United States, 598 F.3d 816, 829 (Fed. Cir. 2010); Mid Continent, 427 F. Supp. 3d at 1382. Finally, the injury is sufficiently immediate. While not all of the harm Plaintiffs seek to forestall by their proposed injunction is imminent (insofar as liquidation is both a present threat and a future one) liquidation of Plaintiffs' entries will necessarily commence at the conclusion of the first review period on April 30, 2022 unless Plaintiffs request an administrative review. Def.'s Br. at 6–7. The court has consistently held that "[s]ecuring the full benefits of judicial review" of a determination "should not require participation in each [administrative review]," and again declines to require such participation here. Mosaic, 540 F. Supp. 3d at 1335 (quoting Mid Continent, 427 F. Supp. 3d at 1384); see also Husteel, 34 F. Supp. 3d at 1360. The Government's assertion that Plaintiffs' entries "are not subject to liquidation in the near future" given that liquidation would be suspended in the case of a requested administrative review, Def.'s Br. at 7, is therefore insufficient basis to reject Plaintiffs' assertion of immediate risk. Accordingly, the court finds that the harm identified by Plaintiffs is sufficiently immediate, of sufficient magnitude, and evades adequate future remedy such that Plaintiffs have met their burden of showing irreparable harm.[4]

---

[4] The court is also unpersuaded by the Government's argument that Plaintiffs do not face the risk of irreparable harm because "[r]evocation of [the Final Determination,] which Best Mattresses seeks in this case, certainly constitutes meaningful judicial relief regardless of the liquidation status of any specific set of entries." Def.'s Br. at 10. Liquidation of entries prior to the conclusion of appeal invariably results in "the loss of meaningful judicial review" because liquidation results in the irreversible loss of duty deposits. OKI Elec. Indus. Co. Ltd. v. United States, 11 CIT 624, 633, 669 F. Supp. 480, 486 (1987). The fact that judicial review without remedy is still available does not suffice to counterbalance the risk of harm to Plaintiffs.

## II. *Likelihood of Success*

With respect to the likelihood of their success on the merits, Plaintiffs argue that they "have raised a number of substantial questions in the complaint where, based on such questions, Plaintiffs reasonably believe that a statutory injunction is in order." Pls.' Br. at 8. These include allegations of "legal and factual errors" by Commerce as well as Commerce's failure to exclude and include, respectively, Romanian and Mexican Global Trade Atlas Data; misapplication of the transactions disregarded rule; mis-reliance on unreliable financial data; and unreasonable analysis of Plaintiffs' U.S. sales. Id. at 8–10. The Government responds that "Commerce explained its evaluation of the evidence on the record and the reasons for its final determination," and further argues that, even if Plaintiffs prevail on the likelihood of success prong, that prong is "not dispositive." Def.'s Br. at 16.

As the court has found that "the irreparable harm factor tilts decidedly in favor of the movant, the burden of showing likelihood of success is lessened." Mid Continent, 427 F. Supp. 3d at 1384 (citing Husteel, 34 F. Supp. 3d at 1362); see also Qingdao Taifa Grp. Co., Ltd. v. United States, 581 F.3d 1375, 1378–79 (Fed. Cir. 2009); Ugine, 452 F.3d at 1292–93. Furthermore, while the Government has contested Plaintiffs' likelihood of success, it has made no argument suggesting that Plaintiffs' claims are meritless. The court therefore concludes that the likelihood of success requirement has been satisfied.

## III. *Balance of Equities*

Plaintiffs further argue that the balance of equities favors granting the proposed injunction. They note that "if the entries are liquidated prematurely, and Plaintiffs ultimately prevail, [they] will effectively lose [their] right to appeal Commerce's decision" whereas "an injunction will merely postpone the final settlement of the payment of duties to the United States by Plaintiffs"

which is "'at most' an 'inconvenience' to the United States." Pls.' Br. at 10–11 (quoting SKF USA, 28 CIT at 175, 316 F. Supp. 2d at 1328). The Government responds that, while Plaintiffs' argument favors the issuance of an injunction, it does not favor an "open-ended" injunction. Def.'s Br. at 16. Rather, the Government argues that "Best Mattresses's [sic] request for a broader injunction covering future entries is not necessary to maintain the status quo, because the entries at issue remain administratively suspended" and because "Best Mattresses may petition . . . for modification of the injunction" should the status of its entries change. Def.'s Br. at 16–17. Finally, the Government argues that Best Mattresses' proposed extended injunction risks hampering "Commerce's ability to perform its statutory mandate" and must therefore be denied. Def.'s Br. at 17.

The court concludes that the balance of equities favors injunction. As previously stated, Plaintiffs face an immediate threat of irreparable harm stemming from the liquidation of their entries. That this harm could potentially be ameliorated by requiring Plaintiffs' participation in subsequent administrative reviews, and concurrent requests for broader injunctive relief, is not sufficient to render the risk of harm moot. See Mosaic, 540 F. Supp. 3d at 1335 (quoting Mid Continent, 427 F. Supp. 3d at 1384); see also Husteel, 34 F. Supp. 3d at 1360. Furthermore, contrary to the Government's characterization and as the court has previously noted, Plaintiffs' proposed injunction is not truly "open-ended." Rather, "[t]he injunction against liquidation would tie to the judicial proceeding, such that the injunction would expire once this proceeding concludes." Mid Continent, 427 F. Supp. 3d at 1385. In addition, although the Government argues that the proposed injunction could hamper Commerce's ability to perform its statutory duties and thereby infringe upon the authority of the Executive Branch, it provides no further explanation of how the extended injunction might interfere with or impede Commerce's authority. The court has

consistently found that "[s]uspension of liquidation at most inconveniences the Government" by delaying potential collection of duties, and the Government has offered no persuasive evidence that more is at stake here. SKF USA, 28 CIT at 175, 316 F. Supp. 2d at 1328. Even so, the Government is not without recourse should a change in circumstances render the injunction as imposed unduly burdensome. It is well established that a party may, upon a "showing that changed circumstances, legal or factual, make the continuation of the injunction inequitable," request that the court discontinue or otherwise modify the injunction." Aimcor v. United States, 23 CIT 932, 938, 83 F. Supp. 2d 1293, 1299 (1999); see also SolarWorld Ams., Inc. v. United States, 41 CIT __, __, 279 F. Supp. 3d 1343, 1347 (2017). In the absence of such a showing of inequity now, however, the court concludes that the harm posed to Plaintiffs by liquidation outweighs the harm posed to the Government by delay.

### IV. Public Interest

Finally, Plaintiffs argue that "the public interest is best served by preserving Plaintiffs' statutory right to meaningful judicial review of Commerce's determinations" and "by ensuring the effective enforcement of trade laws" and accurate collection of duties. Pls.' Br. at 11 (citations omitted). Because, absent an injunction, liquidation would deprive Plaintiffs of meaningful review and this court of jurisdiction, Plaintiffs argue that the public interest weighs in favor of enjoining liquidation for the pendency of litigation. Id. The Government responds that an injunction imposed only until April 30, 2022 could be extended to avoid liquidation of future entries as-needed, and that "no valid public interest is served by enjoining the liquidation of future entries that are not subject to liquidation in the first place." Def.'s Br. at 17.

The court finds that Plaintiffs have adequately demonstrated that an extended injunction is in the public interest. First, as Plaintiffs correctly note, ensuring that they may obtain judicial

Consol. Court No. 21-00281                                                                                                  Page 15

review of Commerce's determinations is itself in the public interest.  <u>Husteel</u>, 34 F. Supp. 3d at 1363.  It is important that Plaintiffs here contest not merely a single administrative review of an AD order, but rather the AD order itself.  Even allowing that they could indeed seek to extend an injunction constrained to the first administrative review period, to require them to nevertheless repeatedly seek both administrative review of the underlying order and further injunction of liquidation in order to avoid being subject to the contested AD rates imposes a burden without a benefit.  Secondly, "[i]t is well settled that the public interest is served by 'ensuring that [Commerce] complies with the law, and interprets and applies [the] international trade statutes uniformly and fairly.'"  <u>NMB Singapore Ltd. v. United States</u>, 24 CIT 1239, 1245, 120 F. Supp. 2d 1135, 1141 (2000) (third alteration in original) (quoting <u>PPG Indus., Inc. v. United States</u>, 11 CIT 5, 10 (1987)).  By enjoining liquidation of entries for the pendency of the litigation, the court can ensure that duties will ultimately be collected on the subject merchandise both accurately and consistently, even in the absence of annual administrative reviews.  Finally, the fact that Plaintiffs might forego seeking such administrative reviews in light of the extended injunction is itself in the public interest, as "unnecessary time consuming and costly administrative reviews [would therefore] be avoided by the government."  <u>OKI Elec. Indus.</u>, 11 CIT at 632–33, 669 F. Supp. at 486.  Accordingly, the court rejects the Government's assertion that "no valid public interest is served" by Plaintiffs' proposed injunction and finds that Plaintiffs have met their burden of showing that the injunction sought is in the public interest.

## CONCLUSION

Having applied the traditional test for issuance of an injunction under 19 U.S.C. § 1516a(c)(2), the court concludes that: (1) Plaintiffs will suffer irreparable harm in the absence of an injunction; (2) Plaintiffs have demonstrated "a likelihood of success on the merits" because

they have raised serious and substantial questions regarding Commerce's determination which the Government did not meaningfully contest; (3) the balance of equities favors granting the injunction because Plaintiffs are at risk of losing access to judicial review, outweighing any potential burden of delay on the Government; and finally, (4) the public interest is best served by enjoining liquidation to ensure that accurate antidumping duties are assessed. Accordingly, the court grants Plaintiffs' motion for an injunction on the liquidation of any of their merchandise entered on or after November 3, 2020 (excluding the agreed-upon gap period) for the pendency of the litigation.

**SO ORDERED.**

/s/  Gary S. Katzmann
Judge

Dated: February 14, 2022
New York, New York