UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

|   |   |
|---|---|
| BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) **Consol. Ct. No. 21-00281** ) **Nonconfidential Version** ) |
| Defendant, and | ) ) ) |
| BROOKLYN BEDDING, LLC ET AL., | ) ) |
| Defendant-Intervenors. | ) ) |

POST ARGUMENT SUBMISSION OF PLAINTIFFS BEST MATTRESSES
INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE
INTERNATIONAL COMPANY LIMITED

Jeffrey S. Grimson
Kristin H. Mowry
Sarah M. Wyss
Jacob M. Reiskin
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

July 26, 2022

In accordance with the Court's Order, ECF No. 80, Plaintiffs Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited ("Best Mattresses") provides this post argument submission.

### I. MAJOR INPUT AND TRANSACTIONS DISREGARDED RULES

#### A. Best Mattresses' Conversion Factor

The Court inquired about the claim that Commerce should have used Best Mattresses' own data to convert the Mexican GTA data for [ ]. Support for this argument comes from Commerce's statutory obligations related to constructed value ("CV") and surrogate value ("SV") calculations.

First, Commerce's major input rule comes under Commerce's "special rules" section for calculating CV, 19 U.S.C. § 1677b(f), which begins with Commerce's preference to use the exporter's records: "Costs shall normally be calculated based on the records of the exporter or producer of the merchandise." Moreover, in making a major input rule adjustment, Commerce remains subject to the obligation to calculate CV using respondent's own data for material costs and expenses. See 19 U.S.C. § 1677b(e) (providing that CV is made up of "the cost of materials . . . employed in producing the merchandise" and "the actual amounts incurred and realized by the specific exporter or producer being examined"). As the Court explained: "Commerce's effort to use as much of the respondent's actual data as possible and supplement that information by using alternative methodologies to fill in the blanks embraces the purpose of CV itself, which is to be an accurate proxy for normal value." Ad Hoc Shrimp Trade Action Comm. v. United States, 33 CIT 533, 552, 616 F. Supp. 2d 1354, 1371 (2009), aff'd, 596 F.3d 1365 (Fed. Cir. 2010). Using Best Mattresses' own data is the only reasonable way for Commerce to "embrace the purpose of CV

itself," in the words of Ad Hoc Shrimp, and to calculate Best Mattresses' margin "as accurately as possible." Thai I-Mei Frozen Foods Co., Ltd. v. United States, 31 CIT 334, 477 F. Supp. 2d 1332, 1357 (2007) ("To ensure compliance with this purpose, Commerce is directed to make case-by-case determinations and consider data unique to the particular case before it.").

Second, because Commerce employed an SV methodology to calculate the input COP for [ ▮ ], Commerce was obligated to treat Best Mattresses similarly to NME respondents; to do otherwise is arbitrary and capricious. See SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001). Commerce has used a respondent's own conversion rate to align the SV with the respondent's consumption of the input. See e.g., Ceramic Tile From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Critical Circumstances Determination, and Postponement of Final Determination, 84 Fed. Reg. 61,877 (Dep't of Commerce Nov. 14, 2019), and accompanying Surrogate Value Mem. at 6. Further, the Court has found that, in selecting SVs, "Commerce's task is to duplicate, to the best of its ability, the prices a company would pay for its inputs." Mittal Steel Galati S.A. v. United States, 31 CIT 1121, 1137, 502 F. Supp. 2d 1295, 1309 (2007). The only reasonable determination, therefore, was for Commerce to tailor its calculation to Best Mattresses' experience by using Best Mattresses' conversion ratio.

### B. Duty to Submit Data

Petitioners wrongly claimed that Best Mattresses should have supplied alternative [ ▮ ▮ ] and major input data during the investigation. As the Court of Appeals for the Federal Circuit has held, "{t}he burden of production {belongs} to the party in possession of the necessary information." Zenith Elecs. Corp. v. United States, 988 F.2d 1573, 1583 (Fed. Cir. 1993). Best Mattresses had no burden to submit alternative data related to [ ▮ ]

2

[          ] ] or input COP because Best Mattresses did not know, nor could it have reasonably known, that Commerce would calculate the major input and transactions disregarded adjustments as it did.

Regarding [                    ], Best Mattresses provided the actual depreciation expense for [                                             ].  See Letter on Behalf of Best Mattresses to Dep't of Commerce re: Third Supplemental Questionnaire Response at Ex. SD1-3 (Sept. 22, 2020) (Business Proprietary Document) (C.R. 139-179).  Commerce has an established practice of "{f}irst . . . look{ing} at whether respondent purchased the input from an unaffiliated supplier; if unavailable, it looks to sales of the input between an affiliate supplier and an unaffiliated party, and as a final resort, to a reasonable source for market value available on the record."  Rebar Trade Action Coal. v. United States, __ CIT __, __, 398 F. Supp. 3d 1359, 1372 (2019).  Because Best Mattresses provided Commerce with its first preference data – unaffiliated purchases – the only reasonable conclusion was that Commerce would use that data and, therefore, Best Mattresses could not have known to submit alternative market data.

Regarding input COP, Best Mattresses was diligent from the outset of the investigation in explaining its purchasing structure and asking for clarification regarding how to report major input data.  See Letter on Behalf of Best Mattresses to Dep't of Commerce re: Reporting Issue Notification and Request for Clarification at 3 (May 22, 2020) (Business Proprietary Document) (C.R. 37).  Commerce never provided any guidance.  In its Section D questionnaire response, Best Mattresses reiterated that it "notified Commerce . . . of the lack of supplier cost of production data . . . , however Commerce has not yet provided Best Mattresses with any alternative source that Commerce would like Best Mattresses to submit."  See Letter on Behalf of Best Mattresses to

Dep't of Commerce re: Sections C and D Questionnaire Response at D-8-D-9 (July 9, 2020) (Business Proprietary Document) (C.R. 56-67).

Further, Best Mattresses understands that Commerce treats China as an NME and Commerce does not rely on Chinese producer COP when calculating normal value. See generally 19 U.S.C. § 1677b(c)(1)(B). No party to this appeal can say with honesty that Best Mattresses could have reasonably believed that Commerce would have used the COP reported by its Chinese suppliers. Best Mattresses should not be expected to collect voluminous supplier COP data that it knew with certainty would be rejected especially after it asked for clarification from Commerce.

Finally, Petitioners asserted that the Diamond Sawblades case is distinguishable because the NME input made up a small percentage of total inputs and concerned a Hong Kong producer not affiliated with the market economy producer. See Final Results of Redetermination Pursuant to Ct. Remand at 22-24, Diamond Sawblades Mfrs. Coal. v. United States, Ct. No. 06-00248 (June 18, 2014) (Public Version), ECF No. 166. In fact, the case is not disguisable because it reiterates Commerce's practice of looking to a market source on the record. Based on this, Best Mattresses was reasonable in its belief that Commerce would use its actual market data and that it had no reason to submit actual supplier COP data.

## II.   MARKET UNDER CONSIDERATION

There was discussion regarding Commerce's determination that Cambodia is the "market under consideration" for purposes of the transactions disregarded rule. For a full discussion of this issue, refer to pages 9-15 of Best Mattresses' Rule 56.2 Response Brief, ECF No. 56.

### III.  FINANCIAL STATEMENTS

Petitioners claimed that Best Mattresses conceded that financial statements of Emirates Sleep Systems Private Limited ("Emirates") were available via subscription by referencing the Mattresses from Vietnam investigation, a different proceeding.  The Court should reject this line of argument for two reasons.  First, "each investigation has its own unique and separate administrative record."  Yama Ribbons & Bows Co., Ltd. v. United States, 36 CIT 1250, 1256, 865 F. Supp. 2d 1294, 1300 (2012) (citing 19 C.F.R. § 351.306).  As such, any statements that Petitioners referenced from the Mattresses from Vietnam investigation are not on the record here and may not be considered by Commerce.

Second, Commerce stated that Petitioners statement "suggests that they obtained he financial statements from a public fee-based subscription service" and "{w}e agree that a financial statement from a fee-based service would constitute a publicly available source."  See Mattresses From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 86 Fed. Reg. 15,894 (Dep't of Commerce Mar. 25, 2021) (P.R. 309), and accompanying Issues and Dec. Mem. at Cmt. 2 p. 20 (P.R. 301).  This is pure speculation.  Despite repeated opportunities to clarify, Petitioners never actually stated that they obtained the statements from a subscription service and never informed Commerce of their source.  In fact, Petitioners never even asked Commerce to allow them to supplement the record to clarify their source.  There is a clear gap in the record related to the public source of the Emirates financial statements that was a direct result of Petitioners' withholding of information.  Instead of making an assumption in favor of Petitioners, as it did in the Final Determination, Commerce should have used adverse inferences to construe the record against the interests of Petitioners pursuant to 19 U.S.C. § 1677e(a)-(b).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 26, 2022 | /s/ Jeffrey S. Grimson<br>Jeffrey S. Grimson<br>Kristin H. Mowry<br>Sarah M. Wyss<br>Jacob M. Reiskin<br><br>Mowry & Grimson, PLLC<br>5335 Wisconsin Avenue, NW, Suite 810<br>Washington, D.C. 20015<br>202-688-3610<br>trade@mowrygrimson.com<br>*Counsel to Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited* |

6

**CERTIFICATE OF COMPLIANCE**

In accordance with the Standard Chambers Procedures of the Court of International Trade and the Court's July 19, 2022 order on the docket allowing for a post argument submission, I, Jeffery S. Grimson, certify that this submission complies with the Court's word limit. Excluding the cover page, signature block and any certificates of counsel, the word count for this submission is 1,484 words.

| | |
|---|---|
| Dated: <u>July 26, 2022</u> | /s/ Jeffrey S. Grimson<br>Jeffrey S. Grimson<br>Mowry & Grimson, PLLC<br>5335 Wisconsin Avenue, NW, Suite 810<br>Washington, D.C. 20015<br>202-688-3610<br>trade@mowrygrimson.com<br>*Counsel to Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited* |