## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) Consol. Ct. No. 21-00281 ) Nonconfidential ) Version |
| Defendant, and | ) ) |
| BROOKLYN BEDDING, LLC ET AL., | ) ) |
| Defendant-Intervenors. | ) ) |

## PLAINTIFFS BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED COMMENTS ON FINAL RESULTS OF REDETERMINATION

Jeffrey S. Grimson
Sarah M. Wyss
Ronalda G. Smith
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

August 30, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENTS ........................................... 1

STANDARD OF REVIEW ........................................................................................... 2

ARGUMENT .................................................................................................................. 3

   I.    COMMERCE'S DECISION TO EXCLUDE IMPORTS FROM NON-MARKET
   ECONOMY AND EXPORT SUBSIDIZING COUNTRIES FROM THE TRADEMAP AND
   GTA DATA IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN
   ACCORDANCE WITH LAW .................................................................................... 3

      A.    Commerce Failed to Provide Compelling Reasoning for the Reversal of its Decision
      in the Final Determination ................................................................................. 3

   II.    COMMERCE'S DETERMINATION TO USE A SIMPLE AVERAGE INSTEAD OF
   A WEIGHTED AVERSGE FOR THE PER UNIT COST CALULATION OF ITS
   SURROGATE VALUES IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT
   IN ACCORDANCE WITH LAW .............................................................................. 8

   III.    COMMERCE'S CONTINUED RELIANCE ON EMIRATES SLEEP'S FINANCIAL
   STATEMENTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN
   ACCORDANCE WITH LAW .................................................................................. 11

      A.    Commerce's Determination to Reopen the Record Was Unreasonable ................... 12

      B.    Commerce's Determination That Emirates Sleep's Financial Statements are Publicly
      Available is Unsupported by Substantial Evidence and Not in Accordance with Law ........ 15

      C.    Commerce's Determination to Average the GTI and Emirates Sleep Financial
      Statement Is Unsupported By Substantial Evidence and Not In Accordance with Law
      Because the GTI Statements Alone Were the Only Reasonable Source ............................. 21

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

AG der Dillinger Huttenwerke v. United States,
 28 CIT 94, 310 F. Supp. 2d 1347 (2004) ............................................................ 2

Ashley Furniture Indus., LLC v. United States,
 46 CIT __, 607 F. Supp. 3d 1210 ................................................................... 12

Best Mattresses Int'l Co. Ltd. v. United States,
 _ CIT _, 622 F. Supp. 3d 1347 (2023) ...................................................... passim

Burlington Truck Lines v. United States,
 371 U.S. 156 (1962) .......................................................................................... 3

Carbon Activated Tianjin Co. v. United States,
 __CIT __, 586 F. Supp. 3d 1360 (2022) ............................................... 13, 21

Celanese Chems., Ltd. v. United States,
 32 CIT 1250 (2008) .......................................................................................... 6

Changzhou Trina Solar Energy Co. v. United States,
 975 F.3d 1318 (Fed. Cir. 2020) ..................................................................... 2

Citizens to Preserve Overton Park v. Volpe,
 401 U.S. 402, 419 (1971) ............................................................................. 12

Consol. Edison Co. v. NLRB,
 305 U.S. 197 (1938) ........................................................................................ 2

CP Kelco U.S., Inc. v. United States,
 949 F.3d 1348 (Fed. Cir. 2020) ................................................................... 22

Diamond Sawblades Mfrs. Coal. v. United States,
 986 F.3d 1351 (Fed. Cir. 2021) ................................................................... 10

Gleason Indus. Prods. v. United States,
 32 CIT 382, 559 F. Supp. 2d 1364 (2008) ............................................... 10

Huayin Foreign Trade Corp. v. United States,
 322 F.3d 1369 (Fed. Cir. 2003) ..................................................................... 2

Lifestyle Enterprise, Inc. v. United States,
 35 CIT 158, 768 F. Supp. 2d 1286 (2011) ................................................. 2

Nippon Steel Corp. v. U.S. Int'l Trade Comm'n,
 494 F.3d 1371 (Fed. Cir. 2007) ..................................................................... 4

NMB Sing. Ltd. v. United States,
 28 CIT 1252, 341 F. Supp. 2d 1327 (2004) ............................................... 2

QVD Food Co., Ltd. V. United States,
 658 F.3d 1318 (Fed. Cir. 2011) ................................................................... 13

Rhodia, Inc. v. United States,
 25 CIT 1278, 185 F. Supp. 2d 1343 (2001) ....................................... 10, 11

Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States,
 268 F.3d 1376 (Fed. Cir. 2001) ..................................................................... 8

SolarWorld Ams., Inc. v. United States,
   910 F.3d 1216 (Fed. Cir. 2018).................................................................... 2
Tianjin Mach. Imp. & Exp. Corp. v. United States,
   16 CIT 931, 806 F. Supp. 1008 (1992)....................................................... 13
Timken U.S. Corp. v. United States,
   421 F.3d 1350 (Fed. Cir. 2005)................................................................ 3, 5
Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,
   716 F.3d 1370 (Fed. Cir. 2013).................................................................. 8

**Statutes**

19 U.S.C. § 1516a ........................................................................................ 2
19 U.S.C. § 1677b(f)(2) ............................................................................... 3
19 U.S.C. § 1677b(f)(2)-(3) ..................................................................... 6, 7

**Other Authorities**

Certain Cut-to-Length Carbon Steel Plate from Romania: Notice of Final Results and Final
   Partial Recission of Antidumping Duty Administrative Review, 70 Fed. Reg. 12,651 (Dep't of
   Commerce Mar. 15, 2005) ...................................................................... 6
Certain Oil Country Tubular Goods from the Socialist Republic of Vietnam: Final Results of
   Antidumping Duty Administrative Review 2014-2015, 82 Fed. Reg. 18,611 (Dep't of
   Commerce Apr. 20, 2017) ...................................................................... 19
Certain Polyethylene Terephthalate Resin From the People's Republic of China: Final
   Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 13,331 (Dep't of Commerce
   Mar. 14, 2016)..................................................................................... 14
First Administrative Review of Certain Activated Carbon from the People's Republic of China:
   Final Results of Antidumping Duty Administrative Review, 74 Fed. Reg. 57,995 (Dep't of
   Commerce Nov. 10, 2009)..................................................................... 18
Mattresses From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value
   and Final Negative Determination of Critical Circumstances, 86 Fed. Reg. 15,894 (Dep't of
   Commerce Mar. 25, 2021) .............................................................. 4, 14
Notice of Final Determination of Sales at Less than Fair Value and Final Determination of
   Critical Circumstances: Diamond Sawblades and Parts Thereof from the Republic of Korea,
   71 Fed. Reg. 29,310 (Dep't of Commerce May 22, 2006) ...................... 6
Notice of Final Determination of Sales at Less Than Fair Value, and Affirmative Critical
   Circumstances, In Part: Certain Lined Paper Products from the People's Republic of China, 71
   Fed. Reg. 53,079 (Dep't of Commerce Sept. 8, 2006) ........................... 18
Notice of Final Determination of Sales at Less Than Fair Value: Bicycles From the People's
   Republic of China, 61 Fed. Reg. 19,026 ............................................. 10

**Regulations**

19 C.F.R. § 351.301(c)(l)........................................................................... 21
19 C.F.R. § 351.302(a)......................................................................... 14, 20

In accordance with U.S. Court of International Trade Rule 56.2(h), Plaintiffs Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited (collectively "Best Mattresses"), submit these comments in opposition to the Final Results of Redetermination Pursuant to Court Remand filed by the Department of Commerce ("Commerce") on July 17, 2023.  See Final Results of Redetermination Pursuant to Court Remand (Jul. 17, 2023) (Public Document), ECF No. 105-1 ("Remand Redetermination").

## INTRODUCTION AND SUMMARY OF ARGUMENTS

In its Remand Redetermination, Commerce failed to properly implement the directive of this Court by excluding data from non-market economy ("NME") countries and countries with export subsidies from its major input rule calculation and by averaging the financial statements of Sleep Systems Private Limited ("Emirates Sleep") and Grand Twins International ("GTI") in calculating the constructed value ("CV") profit and selling expense ratios.  This Court remanded Commerce's final determination in the antidumping investigation on mattresses from Cambodia for further explanation or reconsideration on three issues: 1) Commerce's use of Cambodian Trademap data under the Transactions Disregarded Rule in order to determine the market price, 2) Commerce's inclusion of imports from NME and export-subsidizing countries and 3) Commerce's determination that the financial statements of Emirates Sleep are publicly available and sufficiently complete.  See Best Mattresses Int'l Co. Ltd. v. United States, _ CIT _, 622 F. Supp. 3d 1347, 1397 (2023) ("Remand Order").

Commerce's determination to reverse course and exclude NME and export subsidizing countries' data is unsupported by substantial evidence and not in accordance with law because Commerce would not normally exclude data from these countries in its market economy cost calculation and has no reasonable basis to do so here in the context of the major input analysis.

Further, although Best Mattresses supports Commerce's determination that Emirates Sleep's financial statements are incomplete and agrees with Commerce's determination to use the GTI financial statements as part of the financial ratios, Commerce's Remand Redetermination on this issue contains several errors and is, therefore, not supported by substantial evidence and is not in accordance with law.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order.  See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004).  Further, any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B)(i); see also AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

Substantial evidence requires "more than a mere scintilla," see, e.g., Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (internal citation omitted), and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence supporting an agency determination must be based on the whole record, and the Court shall consider not only the information that supports the agency's decision but also whatever in the record "that fairly detracts from the substantiality of the evidence."  Changzhou Trina, 975 F.3d at 1326 (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)).  In making its determinations, "Commerce cannot base its analysis on mere speculation, but may draw reasonable inferences from the record."  Lifestyle Enterprise, Inc. v. United States, 35 CIT 158, 179, 768 F. Supp. 2d 1286, 1309 (2011).

Further, Commerce must articulate a "rational connection between the facts found and the choice made."  See Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962).  Similarly, Commerce's remand redetermination must reflect a reasonably discernable path.  See Timken U.S. Corp. v. United States, 421 F.3d 1350, 1354 (Fed. Cir. 2005).

## ARGUMENT

I.  **COMMERCE'S DECISION TO EXCLUDE IMPORTS FROM NON-MARKET ECONOMY AND EXPORT SUBSIDIZING COUNTRIES FROM THE TRADEMAP AND GTA DATA IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

### A. Commerce Failed to Provide Compelling Reasoning for the Reversal of its Decision in the Final Determination

Commerce's decision to exclude imports from NME and export subsidizing countries from the Trademap and GTA data in performing its major input rule analysis is inconsistent with the Remand Order, unsupported by substantial evidence and not in accordance with law because Commerce departed from its established market economy methodology without adequate explanation.  In the Remand Order, this Court remanded for Commerce to further explain its determination to include data from NMEs, finding that "the lack of § 1677b(c)'s formal application does not exempt Commerce's obligation to address the unreliability of NME data, which is derived from the Tariff Act as a whole and affirmed by Commerce's prior practice."  See Remand Order, 622 F. Supp. 3d 1385.  This Court asked Commerce to explain its decision to include data from NME countries and export subsidizing countries in the Cambodian trade market data when implementing the transactions disregarded rule under 19 U.S.C. § 1677b(f)(2).  See id. at 1386.  This Court provided limited instruction to Commerce, stating that "{i}f the presumption does not apply with equal force in the unaffiliated supplier versus affiliated supplier contexts, then the

agency must provide affirmative reasons to explain why that is so." Id.  In short, Commerce failed to provide such reasons as detailed below.

In the Remand Redetermination, instead of providing an explanation for its original determination to include data from NME and export subsidizing countries, Commerce simply reversed its original determination without providing compelling reasoning.  See Remand Redetermination at 26-27.  In a determination to change course, however, "{Commerce} . . . must adequately explain the reason for a reversal of policy."  Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1377 n.5 (Fed. Cir. 2007).  Commerce failed to meet the Nippon Steel threshold when it simply stated that it "reconsidered {its} inclusion of such data in both the GTA and the Cambodian Trademap data and revised our major input and transactions disregarded analysis to exclude the imports from NME countries and countries with broadly available export subsidies."  Remand Redetermination at 26.  That explanation does not amount to substantial evidence.

In its original final determination, Commerce correctly included the NME and export-subsidizing country data, agreeing with Best Mattresses and proving this compelling reasoning:

> {i}n market economy cases, Commerce is required under section 773(f)(l)(A) of the Act to calculate costs based on the records of the exporter or producer of the merchandise which are kept in accordance with generally accepted accounting principles and reasonably reflect costs associated with production. In market economy cases, Commerce relies on the purchase prices paid to unaffiliated suppliers based in these countries. It would be inconsistent with the law and our practice to exclude imports from these countries when using the GTA data as a proxy for market prices and COP.

Mattresses From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 86 Fed. Reg. 15,894 (Dep't of Commerce Mar. 25, 2021) ("Final Determination") (P.R. 309), and accompanying Issues and Dec. Mem. at 11 (Mar. 18, 2021) ("Final I&D Mem.") (emphasis added) (P.R. 301).  Moreover, in that

original determination, Commerce addressed the very question that Commerce asked on remand, namely whether the NME presumption "appl{ies} with equal force in the unaffiliated supplier versus affiliated supplier contexts." Remand Order, 622 F. Supp. 3d at 1386; see also Final I&D Mem. at 11 (P.R. 301). Commerce originally answered that question in the negative – the NME presumption does not apply to unaffiliated suppliers and, accordingly, it included prices from NME and subsidized countries in its market price calculation. See Final I&D Mem. at 9-11 (P.R. 301). Now, Commerce reverses course with insufficient explanation, stating simply that "{Commerce} reconsidered {its} inclusion of such data in both the GTA and the Cambodian Trademap data and revised {its} major input and transactions disregarded analysis to exclude the imports from NME countries and countries with broadly available export subsidies." Remand Redetermination at 26; see also id. at 8. Given Commerce's originally-sound legal determination to include these data, this conclusory sentence does not amount to a reasonably discernible path as is required. See Timken U.S. Corp. v. United States, 421 F.3d 1350, 1354 (Fed. Cir. 2005).

Further, Commerce's implementation of the surrogate value methodology by removing the NME and export subsidizing countries is unlawful and unreasonable because this investigation concerns products from a market economy country, Cambodia. Commerce has no legal basis to exclude import data from NME countries or from allegedly subsidized market economy countries such as Thailand, India, Korea and Indonesia. There are no facts on the record suggesting that the transactions in the import data are not arms-length sales or are otherwise unreliable. Commerce failed to refer to any such facts and has, thus, failed to adequately address this point in the Remand Redetermination.

Commerce's policy of removing such data is rooted in, and only applicable to, NME cases where Commerce employs its surrogate value methodology, which is not the case here. On the

other hand, Commerce's authority to use the GTA data as an estimate for input cost of production ("COP") here is rooted in the statutorily-permitted adjustments to normal value in cases involving market economy countries, such as Cambodia, to account for affiliated party transactions under 19 U.S.C. § 1677b(f)(2)-(3).  Commerce acted arbitrarily and capriciously here by failing to make a reasoned connection between the factual record in this case and its determination to exclude certain countries' import data from its market price calculations.  See Celanese Chems., Ltd. v. United States, 32 CIT 1250, 1254 (2008) (providing that arbitrary and capricious means "having no satisfactory explanation or rational connection between the facts found and choices made").

In its Remand Redetermination, Commerce stated that its decision to remove NME and export subsidizing countries' data is consistent with its "longstanding practice."  Remand Redetermination at 8 (citation omitted).  Commerce reasoned "that the Act generally assumes that prices for goods produced in NMEs cannot be relied upon for purposes of a price-based analysis." Id. at 27 (citing to Notice of Final Determination of Sales at Less than Fair Value and Final Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the Republic of Korea, 71 Fed. Reg. 29,310 (Dep't of Commerce May 22, 2006)).  Commerce further argued that "{Commerce does} not use export prices from a market economy for the valuation of surrogate values when {it has} a reasonable basis to believe or suspect that the product benefits from broadly available export subsidies."  Id. at 28 (citing to Certain Cut-to-Length Carbon Steel Plate from Romania: Notice of Final Results and Final Partial Recission of Antidumping Duty Administrative Review, 70 Fed. Reg. 12,651 (Dep't of Commerce Mar. 15, 2005)).  Commerce takes the position that "the general assumption is that Commerce will normally exclude the data from NME countries and countries with broadly available export subsidies unless a party can rebut the presumption that those prices are subsidized."  Id. (internal citations omitted).  Commerce

reasoned that "in light of {its} past practice, {Commerce} reconsidered its inclusion of such data." Id.  Commerce fails, however, to address the elephant in the room – what would Commerce have done if the NME inputs were from <u>unaffiliated suppliers</u>?  Commerce also has a longstanding practice of using respondents' purchase prices from NME and subsidized countries in its cost calculation where the inputs are purchased from unaffiliated suppliers.  Now Commerce seems to be setting a new policy whereas even those prices would be scrutinized by its "longstanding practice" that "assumes that prices for goods produced in NMEs cannot be relied upon for purposes of a price-based analysis."  Remand Redetermination at 8, 27.  Commerce fails to explain how the NME presumption is now reasonable for affiliated purchases but would not be for unaffiliated purchases, which is exactly what the Court asked Commerce to do on remand.  <u>See</u> <u>Remand Order,</u> 622 F. Supp. 3d at 1386.

In this case, the factual record supports the inclusion of data from NME and export-subsidizing countries.  The United States previously explained that its original determination to include such data was supported by substantial evidence pursuant to 19 U.S.C. § 1677b(f)(2)-(3), which distinguishes between affiliated and unaffiliated purchases under the transactions disregarded and major input rules.  <u>See</u> Def.'s Resp. to Ct.'s Oral Arg. Qs. at 3, July 15, 2022, ECF No. 73; 19 U.S.C. § 1677b(f)(2)-(3).  The United States argued that "{i}n market economy cases, Commerce relies on the purchase prices paid to unaffiliated suppliers based in {non-market economy countries and countries maintaining broadly available export subsidies}."  Def.'s Resp. to Ct.'s Oral Arg. Qs. at 8, July 15, 2022, ECF No. 73 (citing to Final I&D Mem. at 11).  "It would be inconsistent with the law and {Commerce's} practice to exclude imports from these countries when using the GTA data as a proxy for market prices and COP."  Final I&D Mem.at 11 (P.R. 301).

Commerce was correct in its original determination to include the NME and export-subsidizing country data and acts unreasonably in reversing its determination here. The reasoning advanced by Defendant United States and Commerce in its original determination continues to be correct and directly rebuts Commerce's inconsistent reasoning and remand redetermination on this issue. Commerce's determination to exclude the NME and export-subsidizing country data, therefore, is not supported by substantial evidence and not in accordance with law.

## II.    COMMERCE'S DETERMINATION TO USE A SIMPLE AVERAGE INSTEAD OF A WEIGHTED AVERSGE FOR THE PER UNIT COST CALULATION OF ITS SURROGATE VALUES IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

Commerce's determination to use a simple average methodology instead of a weighted average methodology to calculate surrogate COP values in its major inputs and transactions disregarded analysis is unsupported by substantial evidence and not in accordance with law because Commerce does not meet the underlying burden to calculate an antidumping margin as accurately as possible. See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370 (Fed. Cir. 2013); see also Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001) (holding that any methodology Commerce employs must be "based on the best available information and establish {} antidumping margins as accurately as possible").

In its original determination, [ █████████████████████████████████

████████████ ]. See Final Determination (P.R. 309), and accompanying Cost Mem. at attach. [ ██ ] (Mar. 18, 2021) (Business Proprietary Document) ("Final Cost Mem.") (C.R. 276); see also Final Cost Mem. at 2-3 (providing detail of Commerce's COP calculation in its original determination). In its Remand Redetermination, however, Commerce calculated the surrogate COP for the major input analysis "based on the GTA data for Brazil, Malaysia, Mexico, Romania,

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED

Russia and Turkey, and calculated a simple average of the per-unit import values of those six countries for each major input."  Remand Redetermination at 28.   Commerce provided no explanation for departing from its original calculation methodology when it [████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████] ].  See id. at 28; Compare Final Cost Mem. at attach. [ ████ ] (Business Proprietary Document) (C.R. 276) with Remand Redetermination and accompanying Remand Calculation Mem. (Business Proprietary Document) ("Remand Cost Mem.") (REM C.R. 5)[1] and attachments at [ ████ ] (June 5, 2023) (Business Proprietary Document) ("Remand Calc.") (REM C.R. 1).

Here, in the remand calculation, Commerce unreasonably distorted the bottom-line costs of the surrogate values for its major inputs and transactions disregarded methodology by failing to account for import volume differences across the five surrogate countries.  See generally Remand Calc. (REM C.R. 1).  Commerce gives [███████████████████████████████████

███████████████████████████████████████████████████ ].  For example, for [ ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ ].  See Remand Calc. at [ ██████████████████████████ ] (Business Proprietary Document) (REM. C.R. 1).  To remedy this calculation error, Commerce should have revised its per unit calculation consistent with the weighted-average methodology used for calculating each individual country's per-unit cost, but Commerce failed to do so.  See Final Cost Mem. at attach. [ ██ ] (Business Proprietary

---

[1] Documents contained on the Administrative Record Index for the remand proceeding are referenced as REM C.R. XX or REM P.R. XX. Documents cited from the Administrative Record Index from the underlying review will continue to be cited as C.R. XX or P.R. XX.

Document) (C.R. 276) (showing that [███████████████████████████████

████████████ ]); see also Final Cost Mem. at 2-3 (providing detail of Commerce's COP

calculation in its original determination).

In the Remand Redetermination, Commerce now contends that it "consider{s} it

appropriate and reasonable that each of the countries carries equal weight in the calculation with

no evidence on the record leading to a contrary determination" and does not provide further

explanation of its determination.  Remand Redetermination at 28.  Commerce's determination that

each of the countries carries equal weight in its calculation, however, ignores the data on the record

that shows otherwise.  See generally Final Cost Mem. (Business Proprietary Document) (C.R.

276).

Commerce acts contrary to past decisions where the Court found that a weighted average

methodology is more accurate where the surrogate values are "not equally representative of the

surrogate experience." Rhodia, Inc. v. United States, 25 CIT 1278, 1285, 185 F. Supp. 2d 1343,

1350 (2001) ("Rhodia I") (citing to Notice of Final Determination of Sales at Less Than Fair Value:

Bicycles From the People's Republic of China, 61 Fed. Reg. 19,026, and accompanying Issues and

Dec. Mem. (Dep't of Commerce Apr. 30, 1996) (citation omitted) ("Bicycles")); see also Gleason

Indus. Prods. v. United States, 32 CIT 382, 559 F. Supp. 2d 1364 (2008) (upholding Commerce's

use of the weighted average methodology).  Commerce must take an "information-specific

consideration of proactiveness rather than any blanket disregard of all information supplied by a

person whenever some of the information by that person is {considered} unreliable."

Diamond Sawblades Mfrs. Coal. v. United States, 986 F.3d 1351, 1365 (Fed. Cir. 2021).  Further,

Commerce has a practice of changing its methodology where "necessitated by the particular

circumstances of {the} case." Bicycles, 61 Fed. Reg. at 19,037 (emphasis added).

In <u>Rhodia I</u>, the Court remanded for Commerce to explain the reasons for its use of the weighted average methodology or to conform with its usual practice reasoning that where there are a <u>limited number of data points</u>, Commerce typically applies a simple average.  <u>Rhodia I</u>, 25 CIT at 1285, 185 F. Supp. 2d at 1350 (emphasis added).  The Court found that "no such findings concerning representativeness were made."  <u>Id.</u>  In light of this finding, the Court did not preclude Commerce from determining on remand "that a weighted average is the correct method to calculate the necessary ratios."  <u>Id.</u>  Unlike the facts presented in <u>Rhodia I</u>, in this case, there is evidence that the surrogate values are not "<u>equally representative</u> of the surrogate experience."  <u>Rhodia I</u>, 25 CIT at 1285, 185 F. Supp. 2d at 1350 (citation omitted) (emphasis added).  Commerce itself accounted for such <u>finding concerning representativeness</u> in its original determination when [ ███

███████████████████████████████████████████████████████ ] when calculating each individual country's per unit cost.  <u>See</u> Final Cost. Mem.  at attach. [ ███ ] (Business Proprietary Document) (C.R. 276).

In this case, using a weighted average methodology would best reflect the actual market. Further, Commerce does not provide adequate reasoning for its change in methodology from its original determination to that in its Remand Redetermination. Commerce's determination to use the simple average methodology is, therefore, unreasonable, unsupported by substantial evidence and not in accordance with the law.

## III.   COMMERCE'S CONTINUED RELIANCE ON EMIRATES SLEEP'S FINANCIAL STATEMENTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

Commerce's remand determinations that Emirates Sleep's financial statements are incomplete and to use the GTI financial statements as part of Best Mattresses' CV profit and selling expense ratios are supported by substantial evidence and in accordance with law.  <u>See</u> Remand Redetermination at 9 (stating that "because {Commerce} cannot determine whether the 'balance

11

with government authorities' constitutes a government subsidy, {Commerce} cannot sufficiently conclude that Emirates Sleep's financial statements are complete").   Commerce's continued reliance on Emirates Sleep's financial statements, however, is inconsistent with this Court's Remand Order, unsupported by substantial evidence and is not in accordance with law because 1) Commerce unreasonably reopened the record, 2) Commerce incorrectly continued to find that the Emirates Sleep financial statements were publicly available and 3) Commerce wrongly averaged the GTI and Emirates Sleep financial statements.

### A.  Commerce's Determination to Reopen the Record Was Unreasonable

Commerce's determination to reopen the record was unreasonable and contrary to its own past practice.  This Court remanded Commerce's determination regarding the public availability of Emirates Sleep's financial statements, reasoning that "Commerce did not adequately explain its determination that Emirates's financial statements are publicly available." Remand Order, 622 F. Supp. 3d at 1390.

The Court also rejected the Defendant-Intervenor's attempt to support Commerce's determination, and its own deficient financial statement submission, with evidence from a separate proceeding. See id. at 1394-1396.  The Court correctly refused to consider any "facts about the source of Emirates's financial statements that were available on the record of Commerce's investigation into mattress imports from Vietnam." Id. at 1395, n. 14 (citing Ashley Furniture Indus., LLC v. United States, 46 CIT __, 607 F. Supp. 3d 1210, at 1226-27  (2022)).  This Court based its decision on the fact that "{t}hat administrative record is not ... before us,' and neither the court nor Commerce may rely on it." Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419 (1971)).  Based on the administrative record in this proceeding, the Court held that Commerce's "determination that Emirates's financial statements were publicly available cannot be sustained." Id. at 1395.

12

In remanding this issue back to Commerce, this Court did not instruct Commerce to gather new factual information or ask supplemental questions, nor did the Court find that the Petitioners should be granted an additional opportunity to support its CV financial ratios submission. Commerce, however, took it upon itself to take the extraordinary measure of giving the Petitioners a second opportunity to submit factual information in order to perfect a deficient financial statement. Commerce's reopening of the record to the benefit of the Petitioners in this manner runs directly contrary to Commerce's typically firm policy of placing the burden of building the record squarely on interested parties and rejecting any suggestion that Commerce should ask parties supplemental questions when surrogate value sources are deficient. See Carbon Activated Tianjin Co. v. United States, __CIT __, 586 F. Supp. 3d 1360, 1370 (2022) ("To the extent the record did not support Respondents' preferred surrogate value for the bituminous coal, the burden was on Respondents to provide such evidence."); QVD Food Co., Ltd. V. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (citing Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 806 F. Supp. 1008, 1015, (1992)) (providing that "the burden of creating an adequate record lies with {interested parties} and not with Commerce"). Commerce's determination to reopen the record to allow new information regarding public availability was even more egregious because Commerce had another valid financial statement on the record from respondents, that of GTI, which Commerce correctly accepted on remand and used in Best Mattresses' CV calculation. See Remand Redetermination at 35; see also Letter on Behalf of Rose Lion and Best Mattresses re: CV Profit and Selling Expense Cmts. And Info. At Ex. CV-1 (Public Document) (Aug. 17, 2020) ("Resp'ts' CV Info") (P.R. 143-144). Notably, when faced with a similar request to reopen the record to remedy a deficient surrogate value source to insert missing pages, Commerce denied that request, giving the following explanation of its practice:

13

> Although Xingyu argues at length that the Department should have either
> supplemented the record with the missing pages on its own accord, or allowed
> Xingyu to do so, we disagree. . . . Xingyu disregards the well-established principle
> that it is the interested parties' responsibility to build a record before the Department
> to value the factors of production. We disagree that the Department has established
> a "practice" contrary to this principle. . . . {T}he Department typically does not
> depart from this principle when usable surrogate value information is already
> available on the record. . . . Xingyu's request came after the deadline for the
> submission of factual information in this investigation, and information was
> available on the record that could be used to value brokerage and handling.

Certain Polyethylene Terephthalate Resin From the People's Republic of China: Final

Determination of Sales at Less Than Fair Value, 81 Fed. Reg. 13,331 (Dep't of Commerce Mar.

14, 2016), and accompanying Issues and Dec. Mem. at Cmt. 2 (internal footnotes omitted).

Commerce acted contrary to its own past practice of requiring parties to build the record and

otherwise had no reasonable grounds to reopen the record here for the purpose of collecting

information about the public availability of the Emirates Sleep financial statements.  Similar to the

facts in the PET Resin from China case cited above, this is especially true where another available

source on the record, like here with the GTI financial statements.

Commerce takes the position that it "reopened the administrative record for the limited

purpose of requesting information from the Petitioners on the source and process of obtaining

Emirates Sleep's financial statements" and that the Petitioners submitted the information in a

timely manner.  Remand Redetermination at 34 (citing to 19 C.F.R. 351.302(a)).  Commerce

further asserts that its decision to reopen the administrative record did not shift the burden of

creating an adequate record away from the interested parties, reasoning that Commerce "provided

interested parties an opportunity to . . . rebut, clarify, or correct the petitioners' response."  Id.

Best Mattresses does not contest the statutory authority given to Commerce to open the

record.  Commerce's determination to reopen the record, however, was unreasonable and

inconsistent with the Remand Order, in which this Court remanded this issue to Commerce to

14

explain its reason for its determination and to "fairly weigh the available options and explain its decision in light of its selection criteria, addressing any shortcomings." Remand Order, 622 F. Supp. at 1397. Commerce went beyond "weigh{ing} the available options" by reopening the record. Because the new evidence that supports Commerce's remand redetermination is based on unlawfully collected information, Commerce's decision to use Emirates Sleep's financial statements is unsupported by substantial evidence and not in accordance with law.

### B. Commerce's Determination That Emirates Sleep's Financial Statements are Publicly Available is Unsupported by Substantial Evidence and Not in Accordance with Law

Commerce erred in its continued determination that "Emirates Sleep's financial statements are publicly available." Remand Redetermination at 15. Further, Commerce's determination that the Petitioners' response established public availability is unreasonable. This Court remanded this issue to Commerce, finding that "{w}here Commerce acted unreasonably, however, was premising its finding that Emirates's financial statement was publicly available on an inference that the statement was from a 'fee-based subscription service.'" Remand Order, 622 F. Supp. 3d. at 1394 (citing Final I&D Mem. at 20 (P.R. 301)). Moreover, this Court recognized that the Petitioners "have not introduced evidence on the record of how the statements were obtained." Id. (internal citation omitted) (emphasis added). Based on these facts, this Court held that "Commerce's inference that Emirates was obtained from a 'public fee-based subscription service' derives solely, it appears, from Defendant-Intervenor's legal argument that a financial statement need not be free of charge. That is no more than a 'mere scintilla' of evidence, even under our deferential standard." Id.

In its Remand Determination, Commerce determined that the Emirates Sleep financial statements were publicly available because they "are available from both the MCA and Zauba websites" and that the documents were dated December 16, 2019. Remand Redetermination at

14-15 (citing to Letter from Petitioners to Commerce re: Mattresses from Cambodia: Mattress Petitioners' Submission Concerning CV Profit and Selling Expenses at Attach. 2 (Aug. 17, 2020)(Public Document) (P.R. 142) ).   This determination was unsupported by substantial evidence because the record actually still does not "demonstrate how the {P}etitioners obtained the financial statements of {Emirates Sleep} for the period April 1, 2018, through March 31, 2019, submitted to the record of the mattresses from Cambodia AD investigation by the Petitioners on August 17, 2020," as Commerce requested.   See Letter from Dep't of Commerce to Petitioners re: Remand Redetermination at 3 (Mar. 30, 2023) (Public Document) ("Supplemental Q'naire") (REM P.R. 1).   The Petitioners submitted factual information in response from two sources: (1) the Indian Ministry of Corporate Affairs ("MCA") and (2) Zauba Corp.   See Letter on Behalf of Petitioners to Dep't of Commerce re: Mattress Petitioners' Response to the Department's Supplemental Questionnaire at 1-5 (Apr. 6, 2023) (Public Document) ("Pet'rs' Resp.") (REM P.R. 2).   The Petitioners failed to demonstrate, through either source, how they obtained the complete financial statements of Emirates Sleep put on the record on August 17, 2020.   Commerce acted unreasonably in finding that the Petitioners' response established public availability for the following reasons.

MCA Information

First, Commerce was unreasonable in using the Petitioners' information to support public availability because, although the Petitioners claim that an Indian consultant gathered information from the MCA website for them in 2020, the Petitioners did not support this with facts.   In particular, the Petitioners did not provide evidence of the actual MCA user information for their Indian consultant.   None of the Petitioners' screen shots show the name of their Indian consultant or the user login details that its Indian consultant used.   Even if the Petitioners had concerns about

16

sharing this information publicly, they had options to protect sensitive login details (such as partially redacting) while still proving that they did in fact obtain the Emirates Sleep financial statements through the MCA. The Petitioners failed to do so.  There is not a single screen shot showing that the Petitioners or their Indian consultant was logged in to the MCA system.

Second, the Petitioners provided no information whatsoever about its Indian consultant that purportedly downloaded the financial statements from the MCA. There are no e-mail communications provided with the consultant, no invoice from the consultant for payment of the MCA fee and no credentials of the Indian consultant to establish that this consultant could access the MCA system.

Third, the Petitioners did not show that they, or their consultant, purchased the Emirates Sleep financial statements.  It is telling that in Step 8, Petitioner has no screen shots.  See Pet'rs' Resp. at Ex. 3, Step 8 (REM P.R. 2). They merely stated: "{a}fter adding the Company to Cart, the user can view and download the selected documents by paying the requisite fees."  Id.  The Petitioners, however, provided no evidence establishing that they, or their consultant, added the financial statements to their cart or paid the fees.  At minimum, one would expect that the MCA would provide some sort of payment receipt or that the Indian consultant could provide a bank or credit card statement establishing its purchase from the MCA. The Petitioners provided absolutely no receipt of payment or download confirmation contemporaneous with the investigation.

In response to the Remand Order, Commerce instructed the Petitioners to "demonstrate how {they} obtained the financial statements of Emirates Sleep Systems Private Limited (Emirates Sleep) for the period April 1, 2018, through March 31, 2019, submitted to the record of the mattresses from Cambodia AD investigation by the Petitioners on August 17, 2020." Supplemental Q'naire at 3 (REM P.R. 1).  The Petitioners did not respond to this request.  Although

the Petitioners provided some generic MCA screen shots and steps, for the above reasons, they failed to substantiate the public source of their August 17, 2020 submission.  See id.  Whether the financial statements may be available to download today is of no moment when the issue was one of confirming that the financial statements were similarly available to Commerce and any party at the time of submission – an important step in establishing transparency in the process of deriving such values and guarding against unfair reliance on privately-obtained information.  Accordingly, Commerce acted without substantial evidence by relying on this information as support for its continued finding that the Emirates Sleep financial statements were publicly available.

Commerce determined that "the Petitioners provided a clear and adequate, step-by-step demonstration of how they retrieved the financial statements from the MCA website" and takes the position that the record indicates that the MCA website is a public source.  Remand Redetermination at 31.  Commerce cites to prior decisions, arguing that the financial statements "meet the threshold of being considered 'publicly available' for {its} purposes."  Id. at 31 (citing to Notice of Final Determination of Sales at Less Than Fair Value, and Affirmative Critical Circumstances, In Part: Certain Lined Paper Products from the People's Republic of China, 71 Fed. Reg. 53,079 (Dep't of Commerce Sept. 8, 2006); First Administrative Review of Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 74 Fed. Reg. 57,995 (Dep't of Commerce Nov. 10, 2009)).  While these cases are similar in issue, they are inapposite to this case.  In those cases, interested parties provided sufficient information at the time of submission to show public availability, but Commerce made no finding that that information available after the deadline of for submission could support the public availability of the financial statements, which is the precise factual scenario in this case.  Commerce also cites to OCTG from Vietnam in which Commerce determined that the record

contained "adequate information regarding how the financial statements could be obtained from sources that were publicly available and contained no evidence that the financial statements were not publicly available."  Remand Redetermination at 32 (citing to <u>Certain Oil Country Tubular Goods from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review 2014-2015</u>, 82 Fed. Reg. 18,611 (Dep't of Commerce Apr. 20, 2017) ("<u>OCTG from Vietnam</u>"), and accompanying Issues and Dec. Mem. at Cmt. 1 <u>("Vietnam I & D Mem.")</u>).   In <u>OCTG from Vietnam</u>, Commerce was not required to request any information regarding public availability because the Petitioners in that case provided sufficient information in the administrative review.  <u>See</u> Vietnam I & D Mem. at Cmt. 1.  In this case, however the Petitioners did not originally provide evidence of public availability, but instead provided some generic MCA screen shots and steps at a later date in the proceeding.  Accordingly, Commerce's reliance on the MCA information provided by the Petitioners is not supported by sufficient evidence and is not in accordance with law.

Zauba Information

The Zauba information submitted by the Petitioners also did not support Commerce's original determination of public availability.  The Zauba information was placed on the record for the very first time in the Petitioners' remand questionnaire response and only demonstrates, if anything, how someone could download the Emirates Sleep financial statements today.  <u>See</u> Pet'rs'Resp. at 3-4 (REM P.R. 2).  The Petitioners, however, did not support Commerce's original determination that the statements put on the record were publicly available to the Petitioners when they put them on the record on August 17, 2020.  New facts and technologies naturally develop after the end of a Commerce proceeding.  Commerce, in the interest of fairness and predictability, has rules that prevent parties from relying on new information not available to all parties at the

relevant time in the proceeding, here at the deadline to submit CV profit and selling expense information.  See 19 C.F.R. 351.302(a) (2022).

Further, in its rebuttal to the Petitioners' supplemental remand questionnaire, Best Mattresses explained why the Zauba information was unlawful new factual information under Commerce's regulations.  See Letter from Mowry & Grimson to Commerce re: Mattresses from Cambodia: Rebuttal Comments to Petitioners' Supplemental Questionnaire Response at Sec. II (Apr. 13, 2023) (Public Document) (REM P.R. 4). Instead of engaging with Best Mattresses' concerns, Commerce summarily concluded that the Zauba information was allowed because "Commerce reopened the record to obtain new factual information to be submitted regarding the source and the process of obtaining the Emirates Sleep financial statements."  Remand Redetermination at 14.  Commerce completely misunderstands how the Petitioners are using the Zauba information.  The Zauba evidence is not evidence of "the source and the process of obtaining the Emirates Sleep financial statements" that the Petitioners used when placing the Emirates financial statements on the record in 2020.  Rather, this is a new source that the Petitioners now found to try to support their original deficiency.

Instead of adequately demonstrating how they purportedly obtained the Emirates Sleep statements through MCA system, which the Petitioners claimed was the source of their August 17, 2020 submission, the Petitioners provided new factual information not in response to Commerce's questionnaire.  The Petitioners stated that the "exact same financial statements have been retrievable since December 16, 2019 by any member of the public from the website of Zauba Corp."  Pet'rs' Resp. at 2 (REM P.R. 2).  None of the information that the Petitioners submitted about Zauba Corp was responsive to questions posed by Commerce in its supplemental questionnaire and, therefore, Commerce acted unreasonably in accepting the Zauba information.

See Supplemental Q'naire at 3-4 (REM P.R. 1) (asking only for the Petitioners to demonstrate how they obtained the information in 2020 and instructing that "{ t} his is not an opportunity to submit any new information outside of information necessary to adequately respond to the question above"); 19 C.F.R. § 351.301(c)(l) (2022) (providing that Commerce "will reject any untimely filed or unsolicited questionnaire response").

This Court remanded for Commerce to explain its determination regarding public availability of the financial statements and did not instruct Commerce to gather new information. See Remand Order, 622 F. Supp. At 1397.  The only reasonable source for Commerce to further explain its determination in accordance with the Court Remand Order is information that was already on the record in the original proceeding, which does not include the MCA or Zauba information.  The Zauba information is unlawful new factual information and Commerce acted unlawfully by relying on it.  Commerce's continued determination that Emirates Sleep's financial statements are publicly available, therefore, is inconsistent with the Remand Order, not supported by substantial evidence and not in accordance with law.

### C. Commerce's Determination to Average the GTI and Emirates Sleep Financial Statement Is Unsupported By Substantial Evidence and Not In Accordance with Law Because the GTI Statements Alone Were the Only Reasonable Source

While Commerce correctly determined that the Emirates Sleep financial statements are not complete, Commerce's determination is still inconsistent with the Court's Remand Order in that Commerce wrongly averaged the GTI and Emirates Sleep financial statements.  The GTI statements were the only reasonable source.  This Court held that Commerce's determination that the Emirates Sleep financial statements are complete was not supported by substantial evidence and not in accordance with law.  See Remand Order, 622 F. Supp. 3d at 1396.  This Court further reasoned that though Commerce is not required to "choose any particular financial statement . . . Commerce must, however, fairly weigh the available options and explain its decision in light of

its selection criteria, addressing any shortcomings." Id. at 1397 (citing to Carbon Activated Tianjin Co. v. United States, 46 CIT ___ , ___ 586 F. Supp. 3d 1360, 1381 (2022)).

Commerce incorrectly characterizes its decision to average the GTI and Emirates financial statements as an acceptance of two equally flawed sources, stating that "{b}ased on our analysis in the Final Determination and further supplemented here, because we recognize that both sets of financial statements on the record have flaws, we have decided to use an average of Emirates Sleep and GTI's CV profit and selling expense ratios for Best Mattresses/Rose Lion's profit and selling expenses on remand." Remand Redetermination at 16. As Commerce properly recognizes, the GTI statements "represent profit information for production and sales in the preferred foreign country (i.e., Cambodia)" and represent "merchandise that is similar," if not comparable, to the subject merchandise. Id. Commerce, however, identified no internal flaws with the GTI statements calling into question their veracity or completeness. The Emirates financial statements are not from the preferred foreign country (instead coming from India), but they do reflect comparable merchandise. The Emirates statements are incomplete by Commerce's own admission. See id.

In choosing to reject incomplete financial statements, Commerce must "look{} to whether the missing information is 'vitally important' or 'key.'" Ashley Furniture Indus., 46 CIT __, 607 F. Supp. 3d at 1228 (emphasis added). Further, Commerce should reject an incomplete financial statement in the instance where a superior source was available on the record. In CP Kelco U.S., Inc. v. United States, Commerce reasoned that it could not "reasonably rely" on financial statements that were missing "vital information." CP Kelco U.S., Inc. v. United States, 949 F.3d 1348, 1359 (Fed. Cir. 2020) ("CP Kelco Appeal"). In the CP Kelco Appeal, Commerce had previously determined that it was proper to exclude an incomplete financial statement where it is

missing "a critical component in ratio calculations" and that relying on such financial statement could "significantly impact the surrogate financial ratios." Id.  After the second remand redetermination, Commerce "adopt{ed} the practice of rejecting incomplete financial statements unless there {were} no other financial statements on the record." Id. at 1353.  Ultimately, the court in the CP Kelco Appeal upheld Commerce's decision to reject an incomplete financial statement in favor of an alternative source, which although flawed, was the best available information.  Id. at 1359.

In this case, Commerce itself determined that "without Annexure 5 on the record, {it} cannot definitively determine the nature of the 'balances with government authorities' and whether or not they pertain to government subsidies."  Remand Redetermination at 16.  Commerce concedes that without this vital information, it cannot determine the balances and whether or not the statements "pertain to government subsidies." Id.  As such, the only reasonable determination was for Commerce to reject the Emirates Sleep financial statements in favor of using the GTI statements alone in determining CV profit and selling expenses.  Its remand calculation including Emirates Sleep is, therefore, not supported by substantial evidence and is not in accordance with law.

## CONCLUSION

For the above reasons, the Court should find that Commerce's remand redetermination remains unsupported by substantial evidence and not in accordance with law and remand to Commerce again with instructions to explain and reconsider 1) its determination to exclude NME and Export Subsidizing Countries' Data from the Trademap and GTA Data, 2) the methodology used in its major inputs and transactions disregarded calculation, and 3) the use of Emirates Sleep's financial statements in its CV profit and selling expense ratio.

Respectfully submitted,

Dated: August 30, 2023                      /s/ Jeffrey S. Grimson

Jeffrey S. Grimson
Sarah M. Wyss
Ronalda G. Smith
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Best Mattresses International*
*Company Limited and Rose Lion Furniture*
*International Company Limited*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B)(1)(b) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 7,203 words.

Dated: August 30, 2023

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Sarah M. Wyss
Ronalda G. Smith
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited*