**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| _____ )<br>BEST MATTRESSES INTERNATIONAL )<br>COMPANY LIMITED AND ROSE LION )<br>FURNITURE INTERNATIONAL COMPANY )<br>LIMITED, )<br> )<br>        *Plaintiffs*, )<br> )<br>        v. )<br> )<br>THE UNITED STATES, )<br> )<br>        *Defendant*, )<br> )<br>        and )<br> )<br>BROOKLYN BEDDING, LLC, CORSICANA )<br>MATTRESS COMPANY, ELITE COMFORT )<br>SOLUTIONS; FXI, INC., INNOCOR, INC., )<br>KOLCRAFT ENTERPRISES INC., LEGGETT & )<br>PLATT, INCORPORATED, THE )<br>INTERNATIONAL BROTHERHOOD OF )<br>TEAMSTERS, and UNITED STEEL, PAPER AND)<br>FORESTRY, RUBBER, MANUFACTURING, )<br>ENERGY, ALLIED INDUSTRIAL AND )<br>SERVICE WORKERS INTERNATIONAL )<br>UNION, AFL-CIO, )<br> )<br>        *Defendant-Intervenors*. )<br>_____) |       Consol. Court No. 21-00281 |

## DEFENDANT'S POST ORAL ARGUMENT SUBMISSION

On January 31, 2024, the Court held oral argument, specifically addressing the parties' responses to the Court's questions. *See* ECF Nos. 121-124. The Court allowed the parties to file post-argument submissions by February 7, 2024. ECF No. 127. We respectfully submit this post-argument submission further addressing whether Commerce reasonably excluded non-market economy (NME) countries and countries with broadly available export subsidies from the

Global Trade Atlas (GTA) and the Cambodian Trademap data in its remand redetermination. *See* Remand Redetermination, ECF No. 105.

As an initial matter, the Court has recognized "Commerce's special expertise" in administering the antidumping statute. *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1381 (Fed. Cir. 2001) (citation and quotation marks omitted). More specifically, Commerce is accorded wide discretion when it makes a determination regarding the "best available information" for surrogate data so long as its decision is reasonable. *See Jiaxing Bro. Fastener Co. v. United States,* 822 F.3d 1289 (Fed. Cir. 2016) ("Commerce has discretion to determine what constitutes the best available information, as this term is not defined by statute.").

After revisiting its practice on remand and the general presumption of NME unreliability implied in the statute, Commerce explained that it normally will exclude data from NME countries and countries with broadly available export subsidies unless a party can rebut the presumption of unreliability. *See* Remand Redetermination at 26-28; *see also Peer Bearing Company–Changshan v. United States*, 298 F. Supp. 2d 1328, 1337 (Ct. Int'l Trade 2003) (explaining that once "a rebuttable presumption is established that the prices paid are distorted" the burden shifts to the challenging party "to present evidence demonstrating that its supplier did not benefit from such subsidies").

Moreover, in addition to the cases Commerce relied on previously, we submit additional precedent to further support Commerce's practice of excluding data from NME countries and countries with broadly available subsidies from surrogate data used as a proxy for missing market price and cost information. In a companion mattresses case, Commerce determined that GTA import data was the most reliable information with which to value a supplier's inputs and specifically did not use data from NME countries in its preliminary determination. *See PT. Zinus*

*Global Indonesia v. United States*, 628 F. Supp. 3d 1252, 1283 (Ct. Int'l Trade 2023). As explained here and previously, Commerce has a demonstrated practice of disregarding data from NME countries and countries with broadly available subsidies when determining surrogate values. *See Certain Steel Nails from the People's Republic of China*; 2018-2019, 85 Fed. Reg. 83,054 (Dep't of Commerce Dec. 21, 2020) ("Commerce continues to apply its long-standing practice of disregarding {surrogate values} if it has reason to believe or suspect the source data may be dumped or subsidized."); *Jiangsu Senmao Bamboo and Wood Indus. Co., Ltd. v. United States*, 322 F. Supp. 3d 1308, 1318 (Ct. Int'l Trade 2018) (using GTA import data "from all countries other than those Commerce inferred to have benefited from export subsidies (India, Indonesia, South Korea and Thailand) and nonmarket economy countries (e.g., China and Vietnam); *Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1317 (Ct. Int'l Trade 2016) (using GTA data but "disregarding prices from NME countries, prices that may have been dumped or subsidized, and imports originating from unspecified countries."). For the final determination, Commerce used import value data obtained from the GTA pertaining to plywood imports in Thailand (Thai Harmonized Tariff Schedule subheading 4412.32.00–000) to value Senmao's plywood input. IDM at 41. Commerce then calculated an average unit value for Thai imports.

Best Mattresses provides no binding authority that would require Commerce to include data from NME countries and countries with broadly available export subsidies in its analysis. *See* Def.'s Reply Br., ECF No. 114 at 14-16. Instead, Best Mattresses unsuccessfully mischaracterizes each case Commerce relies on to assert that the presumption of unreliability of NME prices or prices from countries with broadly available export subsidies only applies in the context of NME proceedings. *See* Best Mattresses Resp., ECF No. 124 at 2-3. However, none of the cases make this distinction, nor does the statute require Commerce to disregard the

presumption of unreliability of NME prices or prices from countries with broadly available export subsidies in market economy (ME) proceedings. *See Sawblades from the Republic of Korea*, 71 Fed. Reg. 29,310 (Dep't of Commerce May 22, 2006) (explaining that the statute allows Commerce the discretion to calculate costs of production by other reasonable means when it reasonably determines that the use of a respondent's recorded costs is inappropriate); *Certain Cut-to-Length Carbon Steel Plate from Romania*, 70 Fed. Reg. 12,651 (Dep't of Commerce Mar. 15, 2005) (explaining that Commerce could not use export prices from a ME for the valuation of surrogate values because there was a reasonable basis to believe or suspect that the product benefits from broadly available export subsidies.)

Best Mattresses also introduces additional sources in an unsuccessful attempt to save its argument. *See* Best Mattresses Resp. at 3-4. First, it cites Commerce's memorandum denying the petitioners' particular market situation (PMS) allegation, stating that "Commerce relied on its general rule to calculate costs 'based on the records of the exporter or producer of the merchandise'" *id.*, but fails to elaborate as to why a PMS allegation precludes Commerce from excluding certain data deemed unreliable when evaluating a surrogate source. Second, it cites Commerce's now-reversed position that the presumption of unreliability does not apply in a ME investigation. *See Best Mattresses Int'l Co. Ltd. v. United States*, 622 F. Supp. 3d 1347, 1385 (Ct. Int'l Trade 2023). Third, it cites a footnote in *Dioctyl Terephthalate* addressing Commerce's reliance on all a respondent's reported purchases in conducting its standard quarterly cost analysis. However, a quarterly cost analysis is a factually distinct and separate analysis from selecting surrogate data for the purposes of performing major input and transactions disregarded analysis; thus, the analogy is irrelevant. *Dioctyl Terephthalate from the Republic of Korea*, 82 Fed. Reg. 28,824, 28,826 (Dep't of Commerce June 26, 2017).

Lastly, Best Mattresses relies on Commerce's prior statement in its proposed modification, where Commerce explained that there is a difference between ME and NME practice with respect to the use of inputs produced in an NME country, and that the statute requires Commerce to use the actual costs of purchase and makes no mention of limiting those costs by the country from which an input is purchased. Best Mattresses Resp. at 4. However, the issue here is not whether Commerce should use the respondents' reported purchase prices but whether it should include NME prices or prices from countries with broadly available export subsidies in the surrogate data pool. *See Best Mattresses*, 622 F. Supp. 3d at 1385. Again, Best Mattresses' argument falls flat.

At bottom, Best Mattresses fails to provide any binding or persuasive authority contravening Commerce's practice to exclude NME prices or prices from countries with broadly available export subsidies from the surrogate data pool when it determines normal value based on "the best available information regarding the values of {a respondent's factors of production} in a market economy country or countries considered to be appropriate by the administering authority." 19 U.S.C. § 1677b(c)(1). Thus, on remand, Commerce reasonably explained and applied its practice of normally excluding data from NME countries and countries with broadly available export subsidies from surrogate data, and the Court should sustain its determination as lawful and supported by substantial evidence on the record.

<div align="center" style="margin-left:50%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

</div>

OF COUNSEL:                                           s/Kara M. Westercamp
ASHLANDE GELIN                                        KARA M. WESTERCAMP
Attorney                                              Trial Attorney
Department of Commerce                                U.S. Department of Justice
Office of the Chief Counsel                           Civil Division
  for Trade Enforcement & Compliance       Commercial Litigation Branch
                                                      P.O. Box 480
                                                      Ben Franklin Station
                                                      Washington, D.C.  20044
                                                      Tel: (202) 305-7571

February 7, 2024                                      *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's order inviting responses to questions, in that it is less than 1,250 words.

/s/Kara M. Westercamp