## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |
|---|---|
| **BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **Consol. Ct. No. 21-00281** |
| **UNITED STATES,** ) ) | |
| **Defendant,** ) | |
| **and** ) ) | |
| **BROOKLYN BEDDING, LLC ET AL.,** ) ) | |
| **Defendant-Intervenors.** ) ) | |

**BEST MATTRESSES INTERNATIONAL COMPANY LIMITED AND ROSE LION FURNITURE INTERNATIONAL COMPANY LIMITED'S POST-ARGUMENT COMMENTS**

Jeffrey S. Grimson
Sarah M. Wyss
Ronalda G. Smith
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

February 7, 2024

Plaintiffs Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited ("Best Mattresses") hereby respond to the Court's January 31, 2024 Order regarding post argument submissions, ECF No. 127.

For the reasons explained in Best Mattresses' Remand Comments, ECF No. 110, and at the January 31, 2024 oral argument, the Court should find that Commerce's remand redetermination remains unsupported by substantial evidence and not in accordance with law and remand again on three issues: 1) Commerce's exclusion of data from non-market economy ("NME") countries and countries with broadly available export subsidies, 2) Commerce's use of a simple average methodology in its major inputs and transactions disregarded calculation, and 3) Commerce's inclusion of the Emirates Sleep ("Emirates") financial statements. Best Mattresses provides final comments on two of these issues below.

## I.      Contested Country Presumption

In its Remand Redetermination, Commerce reversed course with little explanation, excluding NME countries and countries with broadly available export subsidies from GTA data. See Best Mattresses Remand Cmts. at 3 (Aug. 30, 2023), ECF No. 110. Commerce's reversal is impermissibly conclusory and its explanation is not reasonably discernable. See Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1377 n.5 (Fed. Cir. 2007); Timken U.S. Corp. v. United States, 421 F.3d 1350 (Fed. Cir. 2005). Defendant argues that Commerce adequately explained its determination. See Def.'s Response to the Court's Questions for Oral Argument, ECF No. 123 at 2. At the January 31, 2024 oral argument, however, counsel for Defendant failed to address the shortcomings in Commerce's support for its remand redetermination on this issue. The fact remains that none of Commerce's cited sources support its determination here in a market economy ("ME") investigation.

Defendant relies on Commerce's citation to the Petition.  <u>See</u> Def.'s Response to the Court's Questions for Oral Argument at 2-3.  The Petition is not persuasive or relevant because the standard for Commerce to initiate a petition is low; Commerce simply must have reason to believe that imports are being sold for less than fair value.  <u>See</u> <u>Initiation Notice</u>, 85 Fed. Reg. 23,002.  Further, at initiation, Commerce did not discuss the removal of the contested country data, giving no indication that Commerce actually considered the issue.  There is simply no reason for the Court to believe that Petitioners' removal of the contested data and Commerce's decision to initiate this case stands for a general presumption of unreliability of the contested countries in all ME cases.  That Commerce led with the Petition as support in its remand redetermination merely exposes that it had no solid ME practice or precedent to support its determination here.

Defendant cites to <u>Diamond Sawblades from Korea</u> and <u>CTL Plate Romania</u>, noting "the general presumption of unreliability with {NME} pricing data" and Commerce's "longstanding practice." Def.'s Response at 2.  <u>Diamond Sawblades</u>, in fact, goes on to clearly state that the presumption is within the context of Section 773(c), 19 U.S.C. § 1677b(c), where the subject merchandise is exported from an NME country.  71 Fed. Reg. 29,310 (Dep't of Commerce May 22, 2006).  <u>CTL from Romania</u> is also not relevant here as Commerce did not exclude input prices from subsidized countries when Romania was in ME status.  In that case, the presumption applied because Romania was in NME status.  <u>See</u> <u>Certain Cut-to-Length Carbon Steel Plate From Romania</u>, 69 Fed. Reg. 54,108, 54,113 (Dep't Commerce Sept. 7, 2004).  Defendant also cites <u>Wind Towers from Vietnam</u> in support for the "general assumption," which is also <u>only</u> relevant in the NME context.

Moreover, Commerce, in this case, has previously explained that the presumption of unreliability does not extend to ME investigations because "Commerce relies on the purchase

prices paid to unaffiliated suppliers based in these countries {and i}t would be inconsistent with the law and our practice to exclude imports from these countries when using the GTA data as a proxy for market prices and COP." <u>Mattresses From Cambodia</u>, 86 Fed. Reg. 15,894 (Dep't of Commerce Mar. 25, 2021) (P.R. 309), Issues and Dec. Mem. ("IDM") at 11 (Mar. 18, 2021) (P.R. 301); <u>see also</u> PMS Mem. at 4 (Oct. 27, 2020) (P.R. 238).

In sum, Defendant failed to provide a compelling rebuttal to Best Mattress' argument that the presumption of unreliability does not apply here.

## II. Financial Statements

Commerce had no reasonable basis and acted without substantial evidence by choosing to average the Emirates and Grand Twins International ("GTI") financial statements. Defendant and Defendant-Intervenor argue that Commerce has a preference to average ratios from multiple financial statements where all available statements have flaws. Despite their arguments, Commerce's use of a multi-statement average in this case is unreasonable based on the facts at hand and Commerce's past practice.

Here, Commerce's choice was not between two "appropriate but imperfect alternatives." <u>Tr. Chem Co. v. United States</u>, 35 CIT 1012, 1017, 791 F. Supp. 2d 1257, 1263 (2011) (emphasis added). The Emirates statements are incomplete, missing vital information, and are, therefore, unreliable. <u>See</u> <u>CP Kelco U.S., Inc. v. United States</u>, 949 F.3d 1348, 1359 (Fed. Cir. 2020). Further, Commerce has not supported with substantial evidence its determination that the Emirates statements are publicly available and has itself concluded that the statements are incomplete. <u>See</u> Remand Redetermination at 16. The GTI statements have none of these flaws.

Defendant and Defendant intervenor cite to <u>Dorbest</u> and <u>NTSF Seafood</u> to support Commerce's determination to average the two statements. <u>See</u> Def. Response at 2-4; Def. Int.

Resp. at 5; see also Dorbest, Ltd. v. United States, 30 CIT 1671, 1686, 462 F. Supp. 2d 1262, 1277 (2006); NTSF Seafood Joint Stock Company v. United States, 2022 Ct. Intl. Trade LEXIS 40, *53 (Ct. Int'l Trade 2022). These cases, however, support Commerce's practice of excluding incomplete or unreliable statements from the average. In Dorbest, Commerce explained that its preference to average multiple statements is relevant only when those statements are not "distortive or otherwise unreliable." 604 F.3d 1363, 1374 (Fed. Cir. 2010). In NTSF Seafood, Commerce departed from its two-statement preference when it identified issues with the contemporaneity and completeness of one of the Indian financial statements. See NTSF Seafood Joint Stock Company v. United States, Nos. 20-00104, 20-00105, 2022 Ct. Intl. Trade LEXIS 40 at *53 (Ct. Int'l Trade Apr. 25 2022).

Commerce, furthermore, has an obligation to choose the best of the two statements and has done so in the past. Shanghai Tainai Bearing Co. v. United States, __ CIT __, 658 F. Supp. 3d 1269, 1291 (2023); Ad Hoc Shrimp Trade Action Comm. v. United States, 618 F.3d 1316, 1320 (Fed. Cir. 2010). In Shanghai Tainai, Commerce determined that "Commerce's preference for using financial multiple statements was not applicable." 618 F.3d 1291. Commerce chose to only use one financial statement concluding that it was the best available information and choosing not to rely on the seriously flawed financial statement. Id. In Ad Hoc Shrimp, Commerce ultimately decided to rely on two out of three financial statements after rejecting the seriously flawed financial statement that was not profitable. 618 F.3d at 1320.

The two financial statements here are not "equally flawed." The Emirates financial statements have three flaws: incompleteness, evidence of subsidies, and are from a location outside the preferred foreign country. The GTI statements, while presenting similar but not identical merchandise, are accurate, complete, profitable, and contemporaneous. Commerce acted

unreasonably and without substantial evidence by choosing to average the two financial statements instead of relying on the GTI statement alone. The Court, therefore, should remand Commerce to solely rely on the GTI statement.

Respectfully submitted,

Dated: February 7, 2024

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Sarah M. Wyss
Ronalda G. Smith
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, W, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Best Mattresses International Company Limited and Rose Lion Furniture International Company Limited*

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B)(1)(b) of the Standard Chamber Procedures. Excluding the Court's questions, signature block and any certificates of counsel, the word count for this brief is 1,247 words.

Dated: February 7, 2024

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Sarah M. Wyss
Ronalda G. Smith
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, W, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Best Mattresses International*
*Company Limited and Rose Lion Furniture*
*International Company Limited*