Slip Op. 24-59

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEST MATTRESSES INTERNATIONAL
COMPANY LIMITED AND ROSE LION
FURNITURE INTERNATIONAL COMPANY
LIMITED,

        Plaintiffs and Consolidated
        Defendant-Intervenors,

    v.

UNITED STATES,

        Defendant,

    and

BROOKLYN BEDDING, LLC; CORSICANA
MATTRESS COMPANY; ELITE COMFORT
SOLUTIONS; FXI, INC.; INNOCOR, INC.;
KOLCRAFT ENTERPRISES INC.; LEGGETT &
PLATT, INCORPORATED; THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS; AND UNITED STEEL, PAPER
AND FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION, AFL-CIO,

        Defendant-Intervenors and
        Consolidated Plaintiffs.

Before: Gary S. Katzmann, Judge
Consol. Court No. 21-00281

## OPINION AND ORDER

[ The Remand Redetermination is sustained in full.  Judgment on the agency record is entered for
Defendant. ]

Dated:  May 16, 2024

Sarah M. Wyss, Mowry & Grimson, PLLC, of Washington, D.C., argued for Plaintiffs and
Consolidated Defendant-Intervenors Best Mattresses International Company Limited and Rose
Lion Furniture International Company Limited.  With her on the briefs were Jeffrey S. Grimson,

Consol. Court No. 21-00281                                                      Page 2

Jacob Reiskin, Kristin H. Mowry, and Wenhui (Flora) Ji.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia McCarthy, Director, and L. Misha Preheim, Assistant Director. Of counsel on the brief was Ashlande Gelin, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Chase J. Dunn, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for Defendant Intervenors and Consolidated Plaintiffs Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett &Platt, Incorporated; the International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO. With him on the briefs was Yohai Baisburd.

     Katzmann, Judge: The instant matter springs back to the court following its decision and remand order in Best Mattresses Int'l Co. v. United States ("Best Mattresses I"), 47 CIT __, 622 F. Supp. 3d 1347 (2023), ECF No. 99. On remand, the U.S. Department of Commerce ("Commerce") reconsidered certain aspects of the final affirmative antidumping duty determination regarding mattresses from Cambodia arising from a less-than-fair-value investigation. See Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia, 86 Fed. Reg. 26460 (Dep't Com. May 14, 2021) ("Final Determination"), P.R. 325.[1] The results of that redetermination are now before the court. See Final Results of Redetermination Pursuant to Court Remand (Dep't Com. July 17,

---

[1] Commerce had initially noticed its final antidumping duty determination on March 25, 2021. See Mattresses from Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances, 86 Fed. Reg. 15894 (Dep't Com. Mar. 25, 2021), P.R. 309. Commerce later amended that determination to correct two ministerial errors. See Final Determination, 86 Fed. Reg. at 26461. The court will refer to the amended final determination, see id., as the Final Determination.

Consol. Court No. 21-00281                                                    Page 3

2023), ECF No. 105 ("Remand Redetermination").    Plaintiffs Best Mattresses International

Company Limited and Rose Lion Furniture International Company Limited, foreign producers and

exporters of the subject merchandise, argue that the Remand Redetermination is unsupported by

substantial evidence, is contrary to law, and does not comply with the court's remand order.  See

Best Mattresses I, 622 F. Supp. 3d at 1397.  Defendant the United States opposes.  Defendant-

Intervenors, domestic producers of mattresses,[2] do not challenge the Remand Redetermination and

also oppose Plaintiffs' challenges.

    The court concludes that the Remand Redetermination is lawful.  Judgment on the agency

record is entered for the United States.

## BACKGROUND

    The court presumes familiarity with the underlying facts and law of this case.  See Best

Mattresses I, 622 F. Supp. 3d at 1358–68.  In its Final Determination, Commerce determined that

mattresses from Cambodia were being imported into the United States at less than fair value and

assessed a final amended dumping margin of 52.41 percent on imports of subject merchandise.

See 86 Fed. Reg. at 26460.  Plaintiffs and Defendant-Intervenors each brought suit alleging agency

error, and their claims were later consolidated into this action.  See supra note 2.  Upon review of

the parties' claims, the court sustained in part and remanded in part the Final Determination on

February 17, 2023.  See Best Mattresses I, 622 F. Supp. 3d at 1397.  In particular, the Final

---

[2] Defendant-Intervenors are Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort
Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, the
International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO.
Their initial case, see Compl., Brooklyn Bedding, LLC v. United States, No. 21-cv-00282 (CIT
July 12, 2021), ECF No. 13, was consolidated with Plaintiffs' case under case number 21-cv-00281
on September 21, 2021, see Order, Sept. 21, 2021, ECF No. 30.

Determination was remanded as to two of Defendant-Intervenors' challenges regarding surrogate

data and two of Plaintiffs' challenges regarding financial statements:

> (1) Commerce's determination of the market price under the Transactions Disregarded Rule using Trademap data is not in accordance with law because it relies on an unreasonable interpretation of "market under consideration" to mean only the country under investigation;

> (2) Commerce's inclusion of imports from [non-market economy ("NME")] and export-subsidizing countries is unreasonable because Commerce did not justify why its presumption of NME unreliability applies in the affiliated supplier context but not in the unaffiliated supplier context;

> (3) Commerce did not adequately explain its determination that [Emirates Sleep Systems Private Limited's ("Emirates")] financial statements are publicly available; and

> (4) Commerce's determination that Emirates's financial statements are sufficiently complete is unreasonable.

Id. at 1397; see also infra Parts I–IV (describing each basis for remand in more detail). The court

ordered "reconsideration or further explanation" of each issue on remand. Best Mattresses I, 622

F. Supp. 3d at 1397.

Commerce filed the Remand Redetermination with the court on July 17, 2023, assessing a

new dumping margin of 103.79 percent for all respondents. See Remand Redetermination at 36.

Commerce responded to each basis for remand. First, it continued to designate Cambodia as the

"market under consideration" because the Cambodian Trademap data best replicated the

experience of Cambodian mattress producers situated similarly to Plaintiffs. See Remand

Redetermination at 21–23. Second, Commerce reversed course from the Final Determination and

excluded all imports from NME and export-subsidizing countries from the Cambodian Trademap

and six-country Global Trade Atlas ("GTA") datasets when calculating input cost of production

and market price under the Transactions Disregarded[3] and Major Input[4] Rules.  See Remand
Redetermination at 8–9, 26–28.  Third and fourth, Commerce determined that the Emirates
statements were publicly available but incomplete.  See id. at 9, 15–16.  Commerce accordingly
averaged the Emirates statements with those of Grand Twins International (Cambodia) Plc
("GTI"), which were the only other financial statements on the record.  See id. at 16.  Commerce
used that average to calculate constructed value profit and selling expense ratios,[5] which were then
applied to Plaintiffs.  See Remand Redetermination at 16.

---

[3] The Transactions Disregarded Rule states:

> A transaction directly or indirectly between affiliated persons may be disregarded
> if, in the case of any element of value required to be considered, the amount
> representing that element does not fairly reflect the amount usually reflected in
> sales of merchandise under consideration in the market under consideration.  If a
> transaction is disregarded under the preceding sentence and no other transactions
> are available for consideration, the determination of the amount shall be based on
> the information available as to what the amount would have been if the transaction
> had occurred between persons who are not affiliated.

19 U.S.C. § 1677b(f)(2).  See generally Best Mattresses I, 622 F. Supp. 3d at 1359.

[4] The Major Input Rule, operating somewhat similarly, states:

> If, in the case of a transaction between affiliated persons involving the production
> by one of such persons of a major input to the merchandise, the administering
> authority has reasonable grounds to believe or suspect that an amount represented
> as the value of such input is less than the cost of production of such input, then the
> administering authority may determine the value of the major input on the basis of
> the information available regarding such cost of production, if such cost is greater
> than the amount that would be determined for such input under paragraph (2).

19 U.S.C. § 1677b(f)(3).  See generally Best Mattresses I, 622 F. Supp. 3d at 1359–60.

[5] As part of its constructed value calculation, Commerce must determine the value of a
respondent's profit and selling expenses.  See 19 U.S.C. § 1677b(e)(2).  When it lacks the
respondent's own home market or third-country sales, Commerce may choose one of three

Consol. Court No. 21-00281                                                    Page 6

On August 30, 2023, Plaintiffs filed their comments in opposition to the Remand Redetermination before this court.  See Pls.' Cmts. on Final Results of Redetermination, Aug. 30, 2023, ECF No. 110 ("Pls.' Cmts.").  Plaintiffs challenge three aspects of the Remand Redetermination: (1) Commerce's exclusion of imports from NME and export-subsidizing countries from the surrogate data that Commerce used to calculate input cost of production and market price pursuant to the Transactions Disregarded and Major Input Rules; (2) Commerce's use of a simple average of surrogate data in determining input cost of production pursuant to the Major Input Rule; and (3) Commerce's averaging of the Emirates and GTI financial statements in calculating constructed value profit and selling expense ratios.  See id. at 1–2.  Defendant and Defendant-Intervenors filed their responses in support of the Remand Redetermination on September 29, 2023.  See Def.'s Resp. to Pls.' Cmts., Sept. 29, 2023, ECF No. 114; Def.-Inters.' Resp. to Pls.' Cmts., Sept. 29, 2023, ECF No. 117.[6]

On January 22, 2024, the court issued a letter to the parties requesting written responses before oral argument.  See Letter re: Oral Arg. Qs., Jan. 22, 2024, ECF No. 121.  The parties timely responded.  See Pls.' Resp. to OAQs, Jan. 30, 2024, ECF No. 124; Def.'s Resp. to OAQs, Jan. 30, 2024, ECF No. 123; Def.-Inters.' Resp. to OAQs, Jan. 30, 2024, ECF No. 122.  Oral argument was held on January 31, 2024.  See Oral Arg., Jan. 31, 2024, ECF No. 127.  The parties were invited to file briefs after argument, and all parties timely made such submissions.  See Pls.' Post-Arg.

---

alternative methods, so long as its choice is reasonable.  See Best Mattresses I, 622 F. Supp. 3d at 1360.

[6] Plaintiffs also filed comments in support of the Remand Redetermination insofar as Commerce determined that the Emirates statements are incomplete and that the GTI statements are part of the financial ratios.  See Pls.' Cmts. in Supp., Sept. 29, 2023, ECF No. 115.

Consol. Court No. 21-00281                                                                                    Page 7

Subm., Feb. 7, 2024, ECF No. 130; Def.'s Post-Arg. Subm., Feb. 7, 2024, ECF No. 129; Def.-

Inters.' Post-Arg. Subm., Feb. 7, 2024, ECF No. 128.

## DISCUSSION

Jurisdiction remains proper under 28 U.S.C. § 1581(c) and 19 U.S.C.
§§ 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i). An agency's remand redetermination is sustained if it is
supported by substantial evidence on the record and is otherwise in accordance with law, which
includes compliance with the court's remand order. See 19 U.S.C. § 1516a(b)(1)(B)(i); SMA
Surfaces, Inc. v. United States, 47 CIT __, __, 658 F. Supp. 3d 1325, 1328 (2023). Substantial
evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (internal
quotation marks omitted) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
Relatedly, to act in accordance with law, Commerce "must examine the relevant data and articulate
a satisfactory explanation for its action including a 'rational connection between the facts found
and the choice made.'" Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463
U.S. 29, 43 (1983) (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

## I.     *Commerce's Decision to Select Cambodia as the Market Under Consideration Is Lawful*

The court first remanded to Commerce for reconsideration or further explanation of its
selection of Cambodia as the "market under consideration" under the Major Input and Transactions
Disregarded Rules. Best Mattresses I, 622 F. Supp. 3d at 1384. Commerce renewed its selection
of Cambodia on remand, and no party contests that choice before the court. Commerce's decision
is otherwise lawful and therefore sustained.

In its Final Determination, Commerce had chosen Cambodia as the "market under consideration," even though the affiliated suppliers of Plaintiffs were located outside Cambodia. See Best Mattresses I, 622 F. Supp. 3d at 1382. The court held that Commerce's decision to select Cambodia as the "market under consideration" was unlawful because Commerce did not "explain[] why the selection of Cambodia constituted a 'reasonable method' to confirm that the affiliated prices reflect arm's length transactions." Id. at 1384 (internal quotation marks and citation omitted). The court remanded for reconsideration or further explanation, making clear that Commerce was not prevented "from selecting Cambodia as the 'market under consideration' . . . on remand." Id.

Commerce adequately explained its selection of Cambodia as the "market under consideration" on remand. Commerce stated that the "market under consideration" is chosen "on a case-by-case basis" after "analyzing the factors involved and examining the available data." Remand Redetermination at 21–22. To replicate arm's length values in Plaintiffs' market, Commerce used Cambodian Trademap data, which reflected "what a party in Cambodia would pay to obtain such inputs—whether by importing them into Cambodia or otherwise." Id. at 23. While Defendant-Intervenors challenged that use of Trademap data on remand before the agency, see Remand Redetermination at 17–20, they do not present that challenge now before the court, see Def.'s Resp. at 11. Commerce's selection of Cambodia as the "market under consideration" is therefore sustained.

**II.    *Commerce's Exclusion of Imports from NME and Export-Subsidizing Countries from the Trademap and GTA Data Is Lawful***

The court next remanded to Commerce for reconsideration or further explanation of its decision to include imports from NME and export-subsidizing countries in the Cambodian

Trademap and six-country GTA datasets when calculating input cost of production and market price under the Major Input and Transactions Disregarded Rules.  See id. at 1385–86.  On remand, Commerce reversed course and excluded such import data.  See Remand Redetermination at 8–9, 26–28.  Plaintiffs now challenge Commerce's reversal as inadequately explained.  See Pls.' Cmts. at 3–8.  The court sustains Commerce's exclusion of such imports from the surrogate data.

  In the Remand Redetermination, Commerce stated that the court had explained "that there is a general presumption of NME unreliability which is derived from the statute as a whole and affirmed by Commerce practice."  Remand Redetermination at 27; see also Best Mattresses I, 622 F. Supp. 3d at 1385 (citing 19 U.S.C. § 1677(18)(A); Notice of Final Determination of Sales at Less than Fair Value and Final Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the Republic of Korea, 71 Fed. Reg. 29310 (Dep't Com. May 22, 2006), and accompanying IDM cmt. 12).  Commerce also noted the court's conclusion "that Commerce failed to justify why its presumption of NME unreliability applies in the affiliated supplier context but not in the unaffiliated supplier context."  Remand Redetermination at 8; see also Best Mattresses I, 622 F. Supp. 3d at 1385–86.  Commerce relatedly explained that its practice is to "not use export prices from a market economy for the valuation of surrogate values when [it] [has] a reasonable basis to believe or suspect that the product benefits from broadly available export subsidies."  Remand Redetermination at 28 (citing Certain Cut-to-Length Carbon Steel Plate from Romania: Notice of Final Results and Final Partial Recission of Antidumping Duty Administrative Review, 70 Fed. Reg. 12651 (Dep't Com. Mar. 15, 2005), and accompanying IDM cmt. 4).[7]

---

[7] Commerce cited to other instances of similar analysis.  See also Utility Scale Wind Towers from the Socialist Republic Vietnam: Final Results of Antidumping Administrative Review 2013–2014, 80 Fed. Reg. 55333 (Dep't Com. Sept. 15, 2015), and accompanying IDM cmt. 3 (disregarding

Commerce's references to prior practice and reliance on the court's reasoning constituted adequate explanation of its decision on remand. "An explicit explanation is not necessary . . . where the agency's decisional path is reasonably discernible." Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998). Here, the court had asked Commerce to "provide affirmative reasons to explain" why the presumptive exclusion of data from NME countries—and, by extension, from export-subsidizing countries, see supra note 7—would "not apply with equal force in the unaffiliated supplier versus affiliated supplier contexts." Best Mattresses I, 622 F. Supp. 3d at 1386. By reversing course on remand, Commerce applied such presumptions with equal force in both contexts. Commerce did not, then, need to articulate affirmative reasons to deviate from its practice. See, e.g., Huvis Corp. v. United States, 570 F.3d 1347, 1354 (Fed. Cir. 2009) (citing FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009)); Nippon Steel Corp. v. U.S. Int'l Trade Comm'n, 494 F.3d 1371, 1378 n.5 (Fed. Cir. 2007); see also Goodluck India Ltd. v. United States, 47 CIT __, __, 670 F. Supp. 3d 1353, 1374 (2023) ("Agency action that deviates from prior policy decisions or established practice without reasoned justification is arbitrary and capricious.").

---

input purchases from Korea because broadly available export subsidies existed in Korea); Certain Cut-to-Length Carbon Steel Plate from Romania: Notice of Final Results and Final Partial Rescission of Antidumping Duty Administrative Review, 70 Fed. Reg. 12651 (Dep't Com. Mar. 15, 2005), and accompanying IDM cmt. 3 ("Consistent with our practice, we do not use export prices from a market economy for the valuation of surrogate values when we have a reasonable basis to believe or suspect that the product benefits from broadly available export subsidies.").

The court's remand order did not expressly address the presumptive exclusion of price data from export-subsidizing countries. Best Mattresses I, 622 F. Supp. 3d at 1385–86. Commerce was correct to treat similarly the presumptive exclusions of price data from NME countries and from export-subsidizing countries, and no party disputes that analogous treatment.

Commerce's exclusion of imports from NME and export-subsidizing countries from the surrogate country data was therefore adequately explained and in accordance with law.  And to the extent that Plaintiffs challenge the reasonableness of Commerce's exclusion on remand, see Pls.' Cmts. at 6–7, the court had already considered those arguments in holding, in the remand order, that such exclusion is a reasonable extension of the general presumption of NME and export-subsidizing unreliability, see Best Mattresses I, 622 F. Supp. 3d at 1386.

### III. Commerce's Use of a Simple Average in Its Surrogate Value Calculation Is Lawful

Plaintiffs next contend that Commerce erred when it used a simple average, rather than a weighted average, of the six-country GTA data to calculate input cost of production values under the Major Input Rule.  See Pls.' Cmts. at 8.  That argument is dismissed as waived.

Plaintiffs raise the issue of simple averaging for the first time in its administrative case brief on the draft remand results.  See Remand Redetermination at 28.  Per Plaintiffs, Commerce's simple average methodology resulted in distortions that violated its obligation to calculate dumping margins "as accurately as possible."  Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001); see also Pls.' Cmts. at 10–11. But Commerce's cost memoranda for the Final Determination and the Remand Redetermination both appear to use a simple-average method to calculate per-unit cost.[8]  Compare Mem. from S. Medillo to N. Halper, re: Cost of Production and Constructed Value Calculation Adjustments for

---

[8] The only difference between Commerce's calculations appears to be that Commerce excluded imports from NME and export-subsidizing countries from its Remand Redetermination calculation, which the court today holds is lawful.  See supra Part I.  Best Mattresses maintains that Commerce's approach differed in the Final Determination and the Remand Results cost calculations but offers little support beyond stating that the "calculation changes are evident."  Pls.' OAQ Resp. at 4.

the Final Determination (Dep't Com. Mar. 18, 2021), C.R. 276, with Mem. from S. Medillo & P.

Cox, re: Cost of Production and Constructed Value Calculation Adjustments for the Court Remand

(Dep't Com. June 5, 2023), C.R.R. 5.  Plaintiffs could have raised the simple-average challenge in

the agency proceedings leading to the Final Determination, but they did not.

      "Commerce regulations require the presentation of all issues and arguments in a party's

administrative case brief."  Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010)

(citing 19 C.F.R. § 351.309(c)(2)).  And parties are generally required to raise their arguments "at

the time Commerce was addressing the issue."  Mittal Steel Point Lisas Ltd. v. United States, 548

F.3d 1375, 1383 (Fed. Cir. 2008); see also Dorbest, 604 F.3d at 1375 (explaining that, "as a general

rule," "courts should not topple over administrative decisions unless the administrative body not

only has erred but has erred against objection made at the time appropriate under its practice"

(quoting United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 37 (1952))).  It follows that

"arguments that are not raised in a party's opening brief, or that are raised in the first instance on

remand, are generally waived."  Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __,

__, 331 F. Supp. 3d 1390, 1406 (2018), aff'd, 779 F. App'x 744 (Fed. Cir. 2019); see also Dorbest,

604 F.3d at 1375–77 (concluding that challenges to Commerce's final determination that were first

raised on remand were unexhausted and waived); Hyatt v. Dudas, 551 F.3d 1307, 1313 (Fed. Cir.

2008) (holding, in an appeal from the Board of Patent Appeals, that "[u]nder well-established rules

of waiver, the Board is not required on remand to consider grounds of rejection that were not

contested by [the applicant] in his initial appeals to the Board," so long as such arguments did not

newly "become relevant on remand"); NEXTEEL Co. v. United States, 44 CIT __, __, 461 F.

Supp. 3d 1336, 1345 (2020) (finding waiver where a challenge to Commerce's action, present in the final results, was first raised on second remand).

Plaintiffs did not raise their simple-average challenge in their initial administrative case brief but instead first raised the argument on remand. See Dorbest, 604 F.3d at 1375–77; Mittal Steel, 548 F.3d at 1383. Nor did Plaintiffs establish that the simple-average challenge became newly relevant on remand. See Hyatt, 551 F.3d at 1313; see also supra note 8 and accompanying text. Plaintiffs' argument is therefore untimely raised. The court deems it waived and does not reach its merits.

### IV.    *Commerce's Averaging of the Emirates and GTI Financial Statements Is Lawful*

The court next remanded for reconsideration or further explanation Commerce's decision to use the Emirates financial statements for calculating constructed value profit and selling expenses. See Best Mattresses I, 622 F. Supp. 3d at 1389. In addition to other criteria that Commerce must weigh when selecting surrogate financial statements, Commerce prefers financial statements that are publicly available and complete. See, e.g., CP Kelco U.S., Inc. v. United States, 949 F.3d 1348, 1359 (Fed. Cir. 2020); Since Hardware (Guangzhou) Co. v. United States, 37 CIT 803, 805, 911 F. Supp. 2d 1362, 1366 (2013). The court in its remand order concluded that (1) Commerce did not adequately explain its determination that the Emirates statements were publicly available, and that (2) substantial evidence did not support Commerce's determination that the Emirates statements were complete. See Best Mattresses I, 622 F. Supp. 3d at 1389.

On remand, Commerce reopened the factual record so that Defendant-Intervenors would submit more information concerning how the Emirates statements were obtained. See Letter from M. Song, Dep't of Com., to Brooklyn Bedding, re: Remand Redetermination (Mar. 30, 2023), Bar Code No. 4359906-01 ("Suppl. Questionnaire"). Following its review of the record, Commerce

determined that the Emirates statements were publicly available but not complete.  See Remand
Redetermination at 15.  Assessing flaws in both the Emirates and GTI statements, and with no
other financial statements on the record, Commerce used an average of the two statements to
determine the profit and selling expense ratios applicable to Plaintiffs.  See id. at 16.  Plaintiffs
now dispute that decision, arguing that Commerce's continued reliance on Emirates is unlawful
and requesting that Commerce use only the GTI statements.  See Pls.' Cmts. at 11–12.  The court
sustains Commerce's decisions to reopen the record, to determine that the Emirates statement was
public but incomplete, and to average both statements.

### A.    Commerce's Determination to Reopen the Record Was Lawful

In its remand order, the court concluded that Commerce had "not grounded the specific
finding of using a subscription service [to obtain the Emirates statements] in any part of the factual
record before the court."  Best Mattresses I, 622 F. Supp. 3d at 1394–95 (emphasis omitted).  That
lack of substantial evidence warranted remand for "reconsideration or further explanation."  Id. at
1391.  On remand, Commerce issued a supplemental questionnaire requesting that Defendant-
Intervenors file information and screenshots demonstrating how the Emirates statements were
obtained.  See Suppl. Questionnaire at 3–4.  Commerce also provided interested parties an
opportunity to submit factual information to rebut, clarify, or correct Defendant-Intervenors'
submission.  See Remand Redetermination at 34.

The decision to reopen the record is in accordance with law.  Plaintiffs request that the
court bar Commerce from reopening the record on remand, relying on the principle that the burden
to develop the record lies with particular parties, not Commerce.  See Pls.' Cmts. at 13–14.  But
that proposed bar on reopening the record would be applicable to any remand for lack of substantial
evidence.  That, of course, is not the rule.  See Nippon Steel Corp. v. Int'l Trade Comm'n, 345

F.3d 1379, 1382 (Fed. Cir. 2003) ("Whether on remand the Commission reopens the evidentiary record, while clearly within its authority, is of course solely for the Commission itself to determine."); Gold E. Paper (Jiangsu) Co. v. United States, 38 CIT __, __, 991 F. Supp. 2d 1357, 1362 (2014) ("[R]eopening the record was one of two apparent consequences of a record that lacked the substantial evidence necessary to support the legal viability of the presumed fact."). Perhaps Commerce could have chosen Plaintiffs' preferred route and rejected Defendant-Intervenors' factual contention about public availability on the basis that they failed to develop the record. That decision would be subject to its own review for being in accordance with law. But to hold that Commerce was required not to reopen the record on remand, as Plaintiffs propose, would turn a judicial remand for reconsideration into an order that functionally directs an outcome for Plaintiffs. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (counseling remand to agencies for their reasoned consideration of issues rather than directed outcomes). To avoid that result, "[t]he decision to reopen the record is best left to the agency." Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012). Commerce's decision to reopen the record was otherwise reasonable in light of this court's remand order, which found a lack of evidence relevant to public availability on the agency record. Commerce's reopening of the record on remand was therefore lawful.

> **B.      Commerce's Determination That the Emirates Statement Was Publicly Available Is Lawful**

The court next concluded in its remand order that the Final Determination, in which Commerce determined that the Emirates statements were publicly available, had "not grounded the specific finding of using a subscription service [to obtain the Emirates statements] in any part of the factual record before the court." Best Mattresses I, 622 F. Supp. 3d at 1394–95 (emphasis

Consol. Court No. 21-00281                                                    Page 16

omitted).  Having reviewed the submissions of additional information from Defendant-Intervenors

and Plaintiffs on remand, Commerce continued to find that the Emirates statements were publicly

available.  Remand Redetermination at 9.  The court sustains that determination on remand.

In the Remand Redetermination, Commerce found that the Emirates statements were

available on the websites of the Indian Ministry of Corporate Affairs ("MCA") and Zauba Corp.,

which is "a private provider of commercial information that is all a matter of public record, and is

sourced from the official registers, and from published government data."  Id. at 14, 32 (internal

quotation marks and footnote omitted).  Commerce was able to replicate screenshots, provided to

the agency in Defendant-Intervenors' factual submission on remand, that showed step-by-step how

the public could obtain the Emirates statements from either website.  See id. at 10–11.  Commerce

then found that "all interested parties are capable of obtaining the financial statements and

commenting on the reliability and the relevance of the information."  Id. at 10.

Commerce also made findings to date the timing of Defendant-Intervenors' information,

filed in 2023, to August 17, 2020—the date that Defendant-Intervenors submitted the Emirates

statement to the agency record.  The Zauba Corp. database showed that the Emirates statements

were uploaded to the website on December 16, 2019.  Id. at 15.  Commerce also found that Zauba

Corp.'s information is "sourced from the official registers, and from published government data,"

including the MCA.  Id. at 33.  Commerce then concluded that the Emirates statements were

available on both databases by December 16, 2019, which is approximately eight months before

August 17, 2020.  See id.  Consistent with that timeline, the Emirates statements on the agency

record reflected the fiscal year ending on March 31, 2019.  See id. at 14.  The Emirates statements

also included an independent auditor's report dated September 29, 2019, and a board report dated

Consol. Court No. 21-00281                                                    Page 17

December 12, 2019.  See id. at 14–15.  And Commerce found that the documents uploaded by

December 16, 2019, to the online databases were, "indeed, the financial statements covering the

year ending March 31, 2019."  Id. at 15.

       None of Plaintiffs' challenges are availing.  First, Plaintiffs argue that Commerce's

conclusion was unreasonable because Defendant-Intervenors did not supply evidence of certain

facts: the actual MCA user information for the Indian consultant that Defendant-Intervenors used

to access the filings, the identity of the Indian consultant, and payment for the Emirates statements

via the MCA website.  See Pls.' Cmts. at 15–17.  That information may well be relevant to "'a

detailed step-by-step explanation' by the submitter 'of how they obtained the . . . financial

statements.'"  Best Mattresses I, 622 F. Supp. 3d at 1393 (quoting Since Hardware (Guangzhou)

Co. v. United States, 37 CIT 803, 807, 911 F. Supp. 2d 1363, 1367 (2013)).  But the particulars of

Defendant-Intervenors' consultant information and payment receipts do not constitute information

that meaningfully addresses Commerce's underlying concern, when evaluating public availability,

"that a lack of transparency about the source of the data could lead to proposed data sources that

lack integrity or reliability."  Id. (quoting Since Hardware, 37 CIT at 807, 911 F. Supp. 2d at 1367).

Whether or not the specific consultant's information and receipt is on the record, the publicly

available steps to accessing the Emirates statements on the MCA website are the same.

Accordingly, under the substantial evidence standard, see Nippon Steel, 337 F.3d at 1379, the

absence of that information did not compel Commerce to conclude that its findings were flawed,

that the statements were not publicly available, or that Defendant-Intervenors' representations

about accessing the Emirates statement were otherwise not credible.

Second, Plaintiffs argue that Defendant-Intervenors failed to substantiate their assertion that the statements were publicly available on August 17, 2020—the date that Defendant-Intervenors submitted the Emirates statement to the agency record. See Pls.' Cmts. at 17–19. But Commerce reasonably concluded that the documents uploaded online eight months earlier on December 16, 2019 on Zauba Corp., were, "indeed, the financial statements covering the year ending March 31, 2019" that were on the record. Remand Redetermination at 15. Moreover, Commerce found that Zauba Corp.'s information is "sourced from the official registers, and from published government data." Id. at 33. No information on the record suggests otherwise. Commerce's findings therefore constitute substantial evidence for the conclusion that the statements were publicly available on both websites on August 17, 2020.

For the same reason, Plaintiffs' attempt to distinguish prior Commerce determinations cited in the Remand Redetermination, which did not involve later-filed evidence of earlier public availability like in this case, is unavailing. See Pls.' Cmts. at 18–19. The timing of the evidence of public availability is not material where, as here, the later filing reasonably supports a finding that the statement's public availability can be dated to the initial filing date. Relatedly, Plaintiffs also fault Commerce for accepting Defendant-Intervenors' new information on Zauba Corp. when Defendant-Intervenors had used the MCA website rather than the Zauba website. See Pls.' Cmts. at 20–21. But it was well within Commerce's discretion to accept the Zauba Corp. information because, as previously explained, the Zauba Corp. information was substantial evidence establishing the presence of the Emirates statement on the MCA website on August 17, 2020. See Questionnaire at 3 (requiring that Defendant-Intervenors demonstrate how they obtained the financial statements as "submitted to the record . . . on August 17, 2020"). The record therefore

supports Commerce's determination that the Emirates statements were publicly available on August 17, 2020.

> **C.    *Commerce's Decision to Average the GTI and Emirates Statements Is Lawful***

Finally, Plaintiffs challenge Commerce's decision to average the Emirates and GTI statements, arguing that Commerce should have rejected the Emirates statements entirely. The court disagrees and sustains Commerce's decision.

In Best Mattresses I, the court remanded Commerce's determination that the Emirates statements were complete because a missing annexure of the financial statements, which shows Emirates's "[b]alances with government authorities," could hypothetically include an Indian tax credit receivable that may be evidence of a countervailable subsidy ("Annexure 5"). 622 F. Supp. 3d at 1396. On remand, Commerce explained:

> Based on the Court's statements, we find that, without Annexure 5 on the record, we cannot definitively determine the nature of the "balances with government authorities" and whether or not they pertain to government subsidies. Those balances may not pertain to subsidies, but because we do not have a copy of Annexure 5, we cannot with certainty determine what those balances represent. Therefore, we cannot determine that the financial statements are not likewise flawed.

Remand Redetermination at 16. Commerce concluded that both the Emirates statements, for their missing annexure, and the GTI statements, for their lack of comparability to the subject merchandise, were flawed. See id. Commerce decided to average both statements to calculate constructed value profit and selling expense ratios. See id.

That decision is lawful. Commerce is not compelled to reject incomplete financial statements unless the "missing information" is "vital . . . and of critical importance." CP Kelco, 949 F.3d at 1359; see also Ashley Furniture Indus., LLC v. United States, 46 CIT __, __, 607 F.

Consol. Court No. 21-00281                                                                    Page 20

Supp. 3d 1210, 1227–28 (2022) ("Commerce does not invariably reject incomplete financial statements, but instead looks to whether the missing information is vitally important or key." (internal quotation marks and citation omitted)).  While the court did state that the "missing annexure may have deprived Commerce of key information," Best Mattresses I, 622 F. Supp. 3d at 1396, Emirates's balances with government authorities were not so vital and critically important as to compel Commerce's rejection of the statements.  In CP Kelco, Commerce similarly chose between two flawed financial statements, and the Federal Circuit reinstated Commerce's determination to use the Thai Ajinomoto financial statements, which contained evidence of receipt of countervailable subsidies.  949 F.3d at 1358–59.  If Commerce in that case was not compelled to reject the Thai Ajinomoto statements where subsidies were clear on the record, it is difficult to see why Commerce would be compelled here to reject the Emirates statements where the presence of subsidies is uncertain.  Commerce's decision to average the Emirates and GTI statements to account for flaws in both datasets is therefore supported by substantial evidence and otherwise in accordance with law.

## CONCLUSION

The Remand Redetermination is sustained in full as supported by substantial evidence and in accordance with law, which includes compliance with the court's remand order.  Judgment on the agency record will accordingly enter for Defendant the United States.

/s/      Gary S. Katzmann
Judge

Dated: May 16, 2024
        New York, New York